## MICHIGAN CENTRAL RAILROAD COMPANY *v.* POWERS, AUDITOR GENERAL OF THE STATE OF MICHIGAN.[2]

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MICHIGAN.

No. 397. Argued February 21, 23, 26, 1906.—Decided April 2, 1906.

A state statute may be unconstitutional because conflicting with the constitution of the State or with that of the United States, but all objections

---

[1] For abstracts of arguments see *Wyman* v. *Wallace, ante,* p. 230.

[2] For docket titles of cases, in which other railroad companies were

to its validity whether state or Federal may be presented in a single suit and call for consideration and determination; and as a Federal court has the jurisdiction it may be its duty, when the question is properly presented, to pass upon an alleged conflict between a state statute and the state constitution even before the question has been considered by the state tribunals. It will however be reluctant to do so especially when the statute is one affecting public revenues of the State.

There is no general supervision by the Nation over state taxation, in regard to which the State has, generally speaking, the freedom of a sovereign both as to objects and methods.

While there is always a possibility of misconduct on the part of officials, legislation may proceed on the assumption of their properly discharging their duties.

Where a legislature enacts a specific rule for fixing a rate of taxation, by which rule the rate is mathematically deduced from facts and events occurring within the year, and created without reference to the matter of that rate, there is no abdication of the legislative function, but on the contrary there is a direct legislative determination of that rate.

Unless there is some specific provision in the state constitution compelling other action a State may treat its entire territory as composing but a single taxing district, and deal with all property as within the district and subject it to taxation accordingly.

This court may in a case of this nature take judicial notice of the fact that the State of Michigan is traversed in almost every direction by railroads and that the county in which there are no railroads, if any there be, is an exception.

Nothing in the Federal Constitution prevents a State from separating a particular class of property and subjecting it to assessment and taxation in a mode and by a rate different from that imposed on other property and applying the proceeds to state rather than local purposes.

One hearing is sufficient to constitute due process and a state statute giving a state assessing board power to correct valuations, naming time and place at which any person interested may be heard, does not deprive the persons assessed of their property without due process of law because those parties do not have further opportunities to be heard by a court or the legislature.

A legislature is not bound to impose the same rate of tax upon one class of property that it does upon another; it is sufficient if all of the same class are subjected to the same rate and the tax is administered impartially upon them.

This court generally accepts the finding of a trial court upon a question of fact when the evidence is conflicting; and so held in this case as to a charge of systematic under-valuation which the trial court found against.

Act No. 173, Michigan Laws of 1901, imposing upon railroad and corporate

appellants against the same appellee, and submitted simultaneously with this case, see page 302, post.

property the average rate of tax upon other property subject to ad valorem taxes, applying the proceeds to state purposes, and providing for ascertaining the rate by mathematical computations by the state board of assessors based upon reports from the local assessors, does not conflict with the constitution of the State or with that of the United States.

THIS suit was brought in the Circuit Court of the United States for the Western District of Michigan to restrain the respondent, the Auditor General of the State, from enforcing against the appellant the provisions of Act No. 173 of the Michigan laws of 1901, an act to provide for the assessment of the property of railroad and certain other companies, for the levying of taxes thereon by a state board of assessors and for the collection of such taxes. The taxes involved in the suit are those for 1902, resulting from the first assessment under the statute. Prior to the year 1900 the constitution of Michigan contained, in Art. XIV, the following sections applicable to taxation:

"SEC. 10. The State may continue to collect all specific taxes accuring to the treasury under existing laws. The legislature may provide for the collection of specific taxes from banking, railroad, plank road and other corporations hereafter created.

"SEC. 11. The legislature shall provide an uniform rule of taxation, except on property paying specific taxes, and taxes shall be levied on such property as shall be prescribed by law.

"SEC. 12. All assessments hereafter authorized shall be on property at its cash value.

"SEC. 13. The legislature shall provide for an equalization by a state board in the year one thousand eight hundred and fifty-one, and every fifth year thereafter, of assessments on all taxable property except that paying specific taxes.

"SEC. 14. Every law which imposes, continues or revives a tax shall distinctly state the tax, and the object to which it is to be applied; and it shall not be sufficient to refer to any other law to fix such tax or object."

In that year sections 10, 11 and 13 were amended so as to read as follows :

"SEC. 10. The State may continue to collect all specific taxes accruing to the treasury under existing laws. The legislature may provide for the collection of specific taxes from corporations. The legislature may provide for the assessment of the property of corporations, at its true cash value, by a state board of assessors and for the levying and collection of taxes thereon. All taxes hereafter levied on the property of such classes of corporations as are paying specific taxes under laws in force on November sixth, A. D. nineteen hundred, shall be applied as provided for specific state taxes in section one of this article.

"SEC. 11. The legislature shall provide a uniform rule of taxation, except on property paying specific taxes, and taxes shall be levied on such property as shall be prescribed by law: *Provided,* That the legislature shall provide a uniform rule of taxation for such property as shall be assessed by a state board of assessors, and the rate of taxation on such property shall be the rate which the state board of assessors shall ascertain and determine is the average rate levied upon other property upon which ad valorem taxes are assessed for state, county, township, school and municipal purposes."

"SEC. 13. In the year one thousand nine hundred and one, and every fifth year thereafter, and at such other times as the legislature may direct, the legislature shall provide for an equalization of assessments by a state board, on all taxable property, except that taxed under laws passed pursuant to section 10 of this article."

This change in the constitution was doubtless owing to a decision of the Supreme Court of the State, *Pingree* v. *Auditor General,* 120 Michigan, 95, of date of April 26, 1899, holding unconstitutional an act passed in 1881 in respect to the assessment and taxation of telegraph and telephone lines. An act, No. 19 of 1899, passed March 15, 1899, and commonly called the "Atkinson bill," was subject to the same objections as the

act of 1881 and was evidently regarded as equally unconstitutional. Indeed, though not directly involved in that suit, it was referred to in the opinion of Mr. Justice Montgomery.

The act in controversy, Pub. Acts 1901; Act No. 173, provides that the board of state tax commissioners shall constitute a state board of assessors, who are to assess the railroad and certain other corporate property in the State. Section 5 contains the following:

"SEC. 5. The term property as used in this act shall be deemed to include all property, real or personal, belonging to the corporation subject to taxation under this act, including the right of way, roadbed, stations, cars, rolling stock, tracks, wagons, horses, office furniture, telegraph or telephone poles, wires, conduits, switchboards, and all other property used in carrying on the business of said corporations or owned by them respectively, and all other real and personal property and all franchises, said franchises not to be directly assessed, but to be taken into consideration in determining the value of the other property: *Provided, however,* That this definition shall not include, apply to or subject to taxation such real estate as is owned and can be conveyed by such corporations under the laws of this State which is not actually occupied in the exercise of their franchises or in use in the proper operation of their roads or their corporate business; but such real estate so excepted shall be liable to taxation in the same manner and for the same purposes and to the same extent and subject to the same conditions and limitations as to the collection and return of taxes thereon, as is other real estate in the several townships or municipalities in which the same may be situate. The term company, corporation or association, wherever used in this act, shall apply to and be construed as referring respectively to any railroad company, union station and depot company, express company, car loaning company or refrigerator or fast freight line company, and any and all other corporations subject to taxation under this act. The term 'property having a situs in this State' shall include all the property, real and per-

sonal, of the corporations enumerated in this act, owned, used and occupied by them within the limits of this State, and also such proportion of the rolling stock, cars and other property of such corporations as is used · partly within and partly without this State, as herein provided to be determined."

By sections 6 and 7 the several corporations are required to furnish information as to various matters of fact bearing on the matter of assessment. By section 8 property is to be assessed at its "true cash value" on the second Monday of April of each year, and for the purposes of the assessment the board of assessors is authorized to make personal inspection of the property, to take into consideration the reports filed under the act, and such other evidence as may be obtainable bearing thereon. In respect to the property of railroads running partly within and partly without the State, the board is directed to be guided in respect to the matter of taxation of property within the State by the relation which the number of miles of main track within the State bears to the entire mileage of the main track both within and without the State. By section 10 the board is required to meet at the capitol at Lansing on the third Monday of December, and continue in session so long as may be necessary, not later than January 15 next thereafter, for the purpose of reviewing the assessment roll, and any person or company interested has the right to appear during said period and be heard by the assessors, and they are authorized on such application, or on their own motion, to correct the assessment or valuation. Sections 11 and 12 prescribe the method for fixing the rate of tax, the purpose being to impose upon the railroad property the average rate of taxation levied upon other property upon which ad valorem taxes are assessed. This method is accurately described by counsel for the railroad company in these words :

"The new and peculiar feature of the statute lies in the application to corporate property of a special rate of tax, known as the 'average rate'; which is derived by the following process: The total ad valorem taxes for all purposes, state, county, city,

township, village and school district, paid by property in Michigan which is taxed otherwise than under Act 173, are divided by the total assessments of such property, whether made by one or another assessor, and the quotient resulting from this process of division is the rate of tax applied to corporate property under Act 173."

By section 16 the taxes collected from corporations under this act are to "be applied in paying the interest upon the primary school, university and other educational funds, and the interest and principal of the state debt, in the order herein recited, until the extinguishment of the state debt other than the amounts due to educational funds, when such taxes shall be added to and constitute a part of the primary school interest fund."

After a full hearing upon pleadings and proofs the Circuit Court entered a decree dismissing the bill, 138 Fed. Rep. 223, whereupon the plaintiff appealed directly to this court, under section 5 of the Circuit Court of Appeals act.

*Mr. Lloyd W. Bowers, Mr. O. E. Butterfield* and *Mr. Benton Hanchett,* with whom *Mr. A. C. Angell, Mr. Henry Russell* and *Mr. Ashley Pond* were on the brief, for appellant:

The court has jurisdiction of the case to enjoin the collection of the taxes levied against the plaintiff's property. Whenever an officer, by virtue of his position under a state government, by his acts is doing that by which a person is deprived of life, liberty or property without due process of law, and is denied the equal protection of the laws, he acts without authority and the Federal courts have jurisdiction over him personally to restrain his acts. *Prout* v. *Starr,* 188 U. S. 537; *Smyth* v. *Ames,* 169 U. S. 466; *Tindal* v. *Wesley,* 167 U. S. 204; *Chicago &c. R. R. Co.* v. *Chicago,* 166 U. S. 226; *Scott* v. *Donald,* 165 U. S. 58; *Reagan* v. *Farmers' Loan & Trust Co.,* 154 U. S. 362; *In re Tyler,* 149 U. S. 164; *Neal* v. *Delaware,* 103 U. S. 370; *Ex parte Virginia,* 100 U. S. 339.

Federal courts may restrain the collection of invalid taxes

where by the provisions of the law under which they are
levied they become a lien upon the real property of the party
against whom they are levied and a cloud upon his title, and
the remedy at law is held to be inadequate. *Union Pacific
R. R. Co.* v. *Cheyenne,* 113 U. S. 516; *Ogden* v. *Armstrong,* 168
U. S. 224; *Wilson* v. *Lambert,* 168 U. S. 611; *Lyon* v. *Alley,*
130 U. S. 177; *Illinois Cent. R. R. Co.* v. *Adams,* 180 U. S. 28;
*Northern Pacific R. R. Co.* v. *Walker,* 148 U. S. 391; *Lindsay*
v. *Shreveport. Bank,* 156 U. S. 485; *Osborn* v. *United States
Bank,* 9 Wheat. 738; *State Railroad Tax Cases,* 92 U. S. 575;
Cooley on Taxation, 2d ed., 780.

The controversy presented under the Constitution of the
United States is real. In such case the court has jurisdiction
of the whole case, including the non-Federal questions arising
under the constitution and statutes of the State which do not
involve the Federal questions, the appeal being from the Cir-
cuit Court of the United States, and not from the Supreme
Court of the State. 1 U. S. Comp. Laws, p. 508, § 5, p. 549;
*Chappell* v. *United States,* 160 U. S. 499; *Press Publishing Co.*
v. *Monroe,* 164 U. S. 105; *Scott* v. *Donald,* 165 U. S. 58; *Horner*
v. *United States,* 143 U. S. 570; *Giles* v. *Harris,* 189 U. S, 475;
*Missouri* v. *Dockery,* 191 U. S. 165.

The taxing method of Act 173 of the Michigan laws of 1901
is not "due process of law." It makes the "average-rate"
depend directly upon, and grow with, the local taxes of all
the counties, cities, villages, towns and school districts of
Michigan, including those where the taxed railroad has no
office and no property.

The tax is not founded upon, and measured by, a judg-
ment or estimate by the state legislature of the revenue needed
for the state government.

The tax is directly founded upon, and proportionate to, the
expenses (partly governmental and partly proprietary) of local
communities in which the taxpayer neither resides nor has
property, and whose government and local enterprises, there-
fore, do not benefit the taxpayer.

The tax is not founded upon what the legislature considers a just relation between the taxes of those persons who live or have property under the same governments, but upon what the legislature thinks a just division between persons living in different parts of the State, under different local governments, of the expenses of all those governments.

The amount of state tax imposed upon the railroad taxpayer is not fixed by the state legislature itself; but the power of fixing that amount is delegated to the local legislatures of the State's various political subdivisions—counties, cities, towns, villages and school districts—in many of which the taxpayer has no office or property.

The taxpayer is deprived of the right to be heard concerning the amount of his tax.

Such faults in the statute are forbidden by the Federal Constitution. Cooley on Taxation, 3d ed., 50, 83, and cases cited.

Taxation is limited in its exercise by its own nature, characteristics and purposes. *Matter of Washington St.,* 69 Pa. St. 352, 363; Cooley on Taxation, 3d ed., 183.

As to the fundamental restrictions upon taxation, existing apart from the Fourteenth Amendment or other express constitutional provision see *Loan Association* v. *Topeka,* 20 Wall. 655, 662, 663, holding that taxes cannot be levied for a private purpose.

When elements, fundamental in the very conception of a tax, are absent, the charge is not a tax at all, but a form of confiscation. Judson on Taxation, §§ 340, 341, 392; *Tax Commissioners* v. *Holliday,* 150 Indiana, 216; *Lexington* v. *McQuillan's Heirs,* 8 Dana (Ky.), 513, 517, 518; *Woodbridge* v. *Detroit,* 8 Michigan, 274, 301; *State* v. *Township of Redington,* 36 N. J. L. 66, 69.

Due process of law requires the preservation of all features of taxation necessary to its fundamental justice, or to its consistency with the nature of free institutions. An exact and

full definition of the phrase has never been made, or even attempted, by the courts, but descriptions of it have been given that disclose its larger significance. If not in conflict with any provision of the Constitution we must look to those settled usages and modes of proceeding existing in the common and statute law of England, before the emigration of our ancestors, and which are shown not to have been unsuited to their civil and political condition by having been acted on by them after the settlement of this country. *Holden* v. *Hardy*, 169 U. S. 366, 389; *Hurtado* v. *California*, 110 U. S. 516, 535, 546; *Hagar* v. *Reclamation District*, 111 U. S. 701, 707. See also Mr. Webster's argument in *Dartmouth College Case*, 4 Wheat. 518, 581; Cooley on Const. Lim., *355; Johnson, J., in 4 Wheat. 235, 244; Guthrie on Fourteenth Amendment, 66, 67 (and notes); Story on Const., 5th ed., § 1945; Judson on Taxation, §§ 318, 340, 343, 431.

The course of history and long established usage are of large importance in ascertaining what is due process. *Murray* v. *Hoboken Land Co.*, 18 How. 272, 276; *Weimer* v. *Bunbury*, 30 Michigan, 201, 213; *Bell's Gap R. R.* v. *Pennsylvania*, 134 U. S. 232, 237.

"Due process of law" does not permit unlimited taxes, without restraint by consideration of the needs of government; or that the taxes of those who live under one government be measured by the expenses of other governments; or persons or property to be taxed for the relief of others from the expenses of governments under which the taxpayers neither reside nor have property; or the amount of a tax to be determined by any other legislature than that of the community to which the taxpayer belongs; or the amount of a tax to be fixed without the taxpayers being accorded the privilege of hearing.

The taxing of property by a State for private use (even with compensation) is not due process of law. *Mo. Pac. Ry. Co.* v. *Nebraska*, 164 U. S. 403; Judson on Taxation, §§ 346, 350, 391. The taking of property even for public

use without compensation is not due process. *C., B. & Q. R. R. Co.* v. *Chicago,* 166 U. S. 226, 241; *Scott* v. *Toledo,* 36 Fed. Rep. 385; Guthrie on Fourteenth Amendment, 93.

The attempt by a government to tax property beyond its jurisdiction is not due process. *Louisville Ferry Co.* v. *Kentucky,* 188 U. S. 385; *D., L. & W. R. R. Co.* v. *Pennsylvania,* 198 U. S. 341; *Wells* v. *City of Weston,* 22 Missouri, 384.

Due process requires that the taxpayer be given opportunity for hearing concerning the amount of his tax. *Hagar* v. *Reclamation District,* 111 U. S. 701, 710; *Winona & St. Peter Land Co.* v. *Minnesota,* 159 U. S. 526, 535; *D., L. & W. R. R. Co.* v. *Pennsylvania,* 198 U. S. 341.

Undue interference with liberty of contract is not due process of law. *Allgeyer* v. *Louisiana,* 165 U. S. 578, 589. The legislature is bound to provide a method for the assessment and collection of taxes that shall not be inconsistent with natural justice. *Turpin* v. *Lemon,* 187 U. S. 51, 60.

The Fourteenth Amendment controls the action of all branches of government,—legislative, executive and judicial. *Blake.* v. *McClung,* 172 U. S. 239, 260; *Scott* v. *McNeill,* 154 U. S. 34, 45; *Yick Wo.* v. *Hopkins,* 118 U. S. 356, 373; *Ex parte Virginia,* 100 U. S. 339, 346.

Due process of law requires taxes to be laid by a representative legislature,—*i. e.,* by one chosen by the community to which the person or property taxed belongs; which acts in the interest of that community; and which is responsible to the taxpayers.

As said by Chief Justice Marshall: " The only security against the abuse of the power of taxation is found in the structure of government itself. In imposing a tax the legislature acts upon its constituents. This is in general a sufficient security against erroneous and oppressive taxation." *McCulloch* v. *Maryland,* 4 Wheat. 427.

This language contemplates a representative legislature as fundamental in our plan of government. *Providence Bank* v. *Billings,* 4 Pet. 514, 563. See also *Wilcox* v. *Paddock,* 65

Michigan, 23, 28; *People* v. *Hurlbut*, 24 Michigan, 44; *Board of Park Com'rs* v. *Detroit*, 28 Michigan, 227, 244; *Board of Com'rs* v. *Abbott*, 34 Pac. Rep. (Kan.) 416; *Schultes* v. *Eberly*, 82 Alabama, 242, 246; *Parks* v. *Board of Com'rs*, 61 Fed. Rep. 436; *Harward* v. *St. Clair Drainage Co.*, 51 Illinois, 130, 134; *United States* v. *New Orleans*, 98 U. S. 381, 392; *Thompson* v. *Allen County*, 115 U. S. 550, 555; *Lexington* v. *McQuillan's Heirs*, 8 Dana (Ky.), 513, 517.

The provision for the equal protection of the laws is to be liberally construed to carry out its purposes. *Strauder* v. *West Virginia*, 100 U. S. 303; *Boyd* v. *United States*, 116 U. S. 616; *Gulf &c. R. Co.* v. *Ellis*, 165 U. S. 150.

Equal protection of the laws means the protection of equal laws. The inquiry is not limited to the operation of a single law. The question is whether, under the different and several laws of the State, a protection of rights is afforded to a part of the persons within the State which is denied to others. *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540.

If the probable effect of the provisions of the statutes of the State is to produce the discrimination against persons which the equal protection of the Constitution forbids, taxation by which such discrimination is made is unlawful. *San Francisco National Bank* v. *Dodge*, 197 U. S. 70; *Davenport Bank* v. *Davenport*, 123 U. S. 83; *People* v. *Weaver*, 100 U. S. 539; *Pelton* v. *National Bank*, 101 U. S. 143; *Cummings* v. *National Bank*, 101 U. S. 153; *Hills* v. *Exchange Bank*, 105 U. S. 319.

The method for the assessment and collection of taxes provided by the State shall not be inconsistent with natural justice. *Turpin* v. *Lemon*, 187 U. S. 51.

In this manner other taxpayers of the State not subjected to taxation under said Act No. 173 are protected by the principle everywhere recognized as fundamental, viz.: the principle of self-taxation by the legislative action of representatives who are directly responsible to the taxpayers of the district in which the taxes are levied. This is especially the funda-

mental principle of taxation in the State of Michigan.   Cases *supra* and Cooley on Taxation, 2d ed., 61, 62, 63, 141, 142, 241, 242; *Metropolitan Police v. Board of Auditors*, 68 Michigan, 576; *Attorney General v. Detroit Common Council*, 58 Michigan, 213; *State Railroad Tax Cases*, 92 U. S. 575;. *Heine v. Levee Commissioners*, 19 Wall. 655; *Meriwether v. Garrett*, 102 U. S. 472.

The rule that taxes must be for public, and not private, purposes rests upon the same foundation of representative legislation.   The people do not tax themselves when a tax is laid by the legislature for a private purpose, because they have not authorized their legislative representatives to act on other than public matters or for other than public purposes.

By Article IV, § 4, the Constitution of the United States guarantees to every State in this Union a republican form of government.   Legislation by persons who are not members of the legislature that represents the community subjected to the legislation is not republican government, and a tax laid without the authority of a legislative representative of the community that pays the tax is not due process of law.

Due process of law requires, in judicial proceedings, a court having jurisdiction over the subject matter and also over the person or property to be affected by the judgment.   *Pennoyer v. Neff*, 95 U. S. 714, 733.

The right of appeal to the courts for relief from action of the legislature which is claimed to violate private rights is requisite to due process of law; and, therefore, a statute which forbids it is unconstitutional.   *C., M. & St. P. Ry. Co. v. Minnesota*, 134 U. S. 418, 456, 457.

As to all persons, natural or artificial, in the State, the following statutory and constitutional provisions apply, but are denied to appellants:

The amount of state tax is determined by the legislature. Constitution, Art. XIV, §§ 1, 14.   The amount of the county tax is determined by the board of supervisors and the electors of the county.   Constitution, Art. X, § 1; 1 Comp. Laws of

1897, § 2484. The township taxes are determined by the electors of the township and the township board. 1 Comp. Laws, §§ 2269, 2349. The amount of school district taxes is determined by the electors of the district or the school district board. 2 Comp. Laws, §§ 4665, 4674. The amount of city and village taxes is determined by the city and village councils, or the electors of the cities and villages, as provided by their special charters, or the general law for the incorporation of cities and villages. Constitution, Michigan, Art. IV, § 38; Art. XV, § 13; 1 Comp. Laws, §§ 3290–3308 (as to cities); 1 Comp. Laws, §§ 2852–2857, 2873 (as to villages).

The tax levied upon the railroad companies is strictly a state tax, imposed for state purposes, yet the legislature does not determine the amount of the tax, nor is it determined by any legislative action which considers the subject of the tax, nor is it determined by representatives who are responsible for their action to the stockholders of the railroad companies, who are the real payers of the tax.

Municipal corporations are created for the general purposes of government, in which capacity their action is subject to the control of the legislature. They are also granted powers which they exercise for the benefit of their own citizens. The exercise of these powers is discretionary with them, and they are not subject to the control of the legislature. In the exercise of those powers they act in the capacity of private corporations.

It is in the exercise of these powers, and in their character of private corporations, that they provide for the local conveniences for their citizens in furnishing water, light, sewerage, fire protection, public grounds, parks, fountains, adornments, paved streets, water works for private as well as public use, electric light plants for private as well as public lighting, and various other conveniences. Cases *supra* and Cooley on Taxation, 2d ed., 688, 689; *Attorney General* v. *Burrell*, 31 Michigan, 25; *Davock* v. *Moore*, 105 Michigan, 120; *Ill. Trust & Savings Bank* v. *Arkansas City*, 76 Fed. Rep. 271; *People* v. *Coler*,

166 N. Y. 1; *People* v. *Batchellor*, 53 N. Y. 128; *Bailey* v. *Mayor*, 3 Hill, 531; *Safety &c. Co.* v. *Baltimore*, 66 Fed. Rep. 140.

All the various properties acquired by cities, villages and townships for the benefit and enjoyment of their inhabitants are investments, and they are owned by the municipalities in their private character as the property of private corporations. *Mayor* v. *Park Commissioners*, 44 Michigan, 602; *Mt. Hope Cemetery* v. *Boston*, 158 Massachusetts, 509; *Chicago &c. R. R. Co.* v. *Chicago*, 166 U. S. 226.

These so-called taxes are not founded upon, or measured by, the State's actual need of revenue, or a legislative estimate of it. They are the outgrowth of a legislative declaration that a railroad must pay, to the State, as much in proportion to the value of its property as other persons throughout the State pay, on the average, for both state and local purposes (*i. e.*, the expenses not only of the State, but of county, city, town, village and school district organizations), whether that amount of tax be what is needed by the State or not. There is no reasonable, or real, relation between the revenue which comes to the State under this statute, as a result of the amounts of tax levies made by local legislatures for local purposes, and the State's need of revenue. The statute turns the general problem of taxation upside down—by making the apportionment of taxation generally, as between all citizens for all purposes, control the amount of the State's revenue.

The power to tax for state purposes is limited by a fair legislative discretion as to the amount of revenue needed by the State. Otherwise, the legislature can take for the State everything its citizens have,—arbitrarily. *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362, 399; *Schultes* v. *Eberly*, 82 Alabama, 242.

Constitutional limitations may be implied as well as express; and their implication may result either from the essential nature of government or from the general plan of the constitution. *Board of Com'rs* v. *Abbott*, 34 Pac. Rep. 416; *State* v. *Barker*,

57 L. R. A. 244, 250; *People* v. *Fire Association*, 52 N. Y. 311; *State* v. *Parker*, 26 Vermont, 365.

It is the right and duty of this court to consider the real tendency of the taxing process prescribed by the statute in hand, with reference to the question whether it establishes a reasonable connection between state tax and the State's need of revenue. *G., C. & S. F. Ry.* v. *Ellis*, 165 U. S. 150, 154.

The principles of due process of law in respect to taxation, require that the process shall be pursued in the ordinary mode prescribed by law, be just to the parties affected, be adapted to the end to be attained and, when necessary to the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought, and there must be the observance of those general rules established in our system of jurisprudence for the security of private rights. *Hagar* v. *Reclamation District*, 111 U. S. 701; *Davidson* v. *New Orleans*, 96 U. S. 97; *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232; *Lent* v. *Tillson*, 140 U. S. 316; *Kentucky Railroad Tax Cases*, 115 U. S. 321; *Norwood* v. *Baker*, 172 U. S. 269; *Roller* v. *Holly*, 176 U. S. 398; *Weimer* v. *Bunbury*, 30 Michigan, 201; *French* v. *Barber Asphalt Co.*, 181 U. S. 324; Miller on the Constitution, 666; Cooley on Taxation, 2d ed., 51; *Cotting* v. *Kansas City Stock Yards Co.*, 183 U. S. 79; *Santa Clara County* v. *So. Pacific R. Co.*, 18 Fed. Rep. 385.

To determine the tax, when it is an ad valorem tax, requires that the legislature state the amount to be raised or the rate of the tax upon the dollar of the valuation. The determination of the amount to be raised, or the rate of taxation on the valuation is the essential, the chief and necessary act in taxation. In the nature of the case the determination of the amount, or the rate, is a legislative act.

Being a necessary act of the legislature it is not in the power of the State in the preservation of the established principles of American law, which constitute the law of the land, to delegate or refer such determination to the action of any other body of officials. It cannot be referred to and made to depend

upon the legislative or discretionary action of the municipalities: *Morton* v. *Comptroller General*, 4 S. Car. 430; *Houghton* v. *Austin*, 47 California, 646; *S. F. & N. P. R. R.* v. *State Board*, 60 California, 12; Constitution of Michigan, Art. XIV, § 14.

It is an essential of just legislation that the legislature act in view of, and determine the needs of the public in respect to, the objects for which moneys are to be raised by taxation, and of the amount necessary to provide for those needs, and also the extent to which it is just to burden the taxpayers against whom the taxes are to be charged. *Midland* v. *Roscommon*, 39 Michigan, 424; *Michigan Land &c. Co.* v. *Township of L'Anse*, 63 Michigan, 700.

It is an axiom of our law that the power to tax is a power to destroy. Where the amount of the tax to be raised, or the rate of taxation, is determined by the legislature itself, the taxpayers who are to be charged with the taxes have a right to, and an opportunity to, be heard by the legislature upon the whole subject of the taxation, including the purpose of the tax, the needs of the public for the promotion of the object for which the taxes are to be imposed, the amount of taxation required for those needs, and the amount which can be properly and justly charged against the taxpayers.

The right to such a hearing is the right of petition to the legislature upon the subject which is pending before the legislature and upon which it is proceeding to act. This right is a part of the law of the land. Cooley on Const. Lim., 7th ed., 497, 498; 2 Story on the Constitution, § 1894; *United States* v. *Cruikshank*, 92 U. S. 542; *Citizens' Bank* v. *Board of Assessors*, 54 Fed. Rep. 73.

The constitution of Michigan grants to the taxpayers the absolute right to a hearing before the legislature upon the measures to be adopted for their taxation. Article XVIII, § 10; *The State Tax-Law Cases*, 54 Michigan, 350.

This court has held that the determination of a district for taxation—that is, what property shall be subject to taxation

—for local purposes, is legislative action, and when, instead of the legislature making that determination, it delegates to a board of commissioners the power to determine the taxing district the taxpayers have a right to a hearing upon that subject before such board. The deprivation of the right to such hearing would be taking property by taxation without due process of law. *Paulsen* v. *Portland,* 149 U. S. 30; *Fallbrook Irrigation District* v. *Bradley,* 164 U. S. 112; *Spencer* v. *Merchant,* 125 U. S. 345; *French* v. *Barber Asphalt Co.,* 181 U. S. 324.

The equal protection of the laws is denied to the railroad companies in that the protection which is extended by § 14, Art. XIV, constitution of Michigan, to all other taxpayers of the State is denied to said railroad companies.

This provision was adopted into the constitution literally from the constitution of New York of 1846.

The interpretation of this provision of the constitution of New York, by the Court of Appeals, is that it is designed for the protection of the taxpayer. It requires that when the legislature imposes a tax the legislature must determine the amount of tax to be raised, and cannot leave that amount to be determined by the legislative action or discretion of any other department of the State. *People* v. *Board of Supervisors,* 52 N. Y. 556. See also *Central R. R. Co.* v. *State Board,* 49 N. J. L. 1, 17; *Muldenberg Co.* v. *Morehead,* 46 S. W. Rep. (Ky.) 484; *Fleming* v. *Dyer,* 47 S. W. Rep. (Ky.) 444; *Dawson* v. *Ward,* 71 Texas, 72, 76; *Wade* v. *State,* 22 Tex. App. 629; *McCabe* v. *Carpenter,* 102 California, 469; *Schultes* v. *Eberly,* 82 Alabama, 242; *Wells* v. *City of Weston,* 22 Missouri, 384; *Wilcox* v. *Paddock,* 65 Michigan, 23, 28, 29; *State* v. *Des Moines,* 103 Iowa, 76; *Marr* v. *Enloe,* 9 Tennessee, 452; *Board* v. *Houston,* 71 Illinois, 318; *Gage* v. *Graham,* 57 Illinois, 144. And for instances of delegation of legislative power, in other fields than taxation. See *King* v. *C. F. Ins. Co.,* 103 N. W. Rep. (Mich.) 616; *Elliott* v. *Detroit,* 121 Michigan, 611; *Bradshaw* v. *Langford,* 73 Maryland, 428; *Dowling* v. *Lancashire Ins. Co.,* 92 Wisconsin, 62; *O'Neil* v. *Ins. Co.,* 166 Pa. St. 77; *State* v.

*Bound Brook*, 48 Atl. Rep. (N. J.) 1022; *Stevens* v. *Truman*, 127 California, 155; *Jernigan* v. *Madisonville*, 102 Kentucky, 313; *Schaezlein* v. *Cabaniss*, 135 California, 466; *Harmon* v. *State*, 66 Ohio St. 249; *Beasley* v. *Ridout*, 94 Maryland, 641, 658; *State* v. *Rogers*, 73 N. E. Rep. (Ohio) 461.

The power of the legislature, in establishing different methods of taxation for different persons and property, is that of classification, and such power is recognized on all hands; but the extent of the power depends upon the meaning of classification. The right to classify is not the right to act arbitrarily, or to deprive persons of the most fundamental sorts of protection accorded to persons generally. Classification means only the division of persons or properties into different classes on some basis or principle that, from its own nature and from the nature of the persons or properties classified, affords a reasonable and just ground for the different treatment of the different classes. *Gulf, Colorado & S. F. Ry.* v. *Ellis*, 165 U. S. 150.

The basis of classification must be natural, and not arbitrary. *De Brell* v. *Morrissey's Heirs*, 15 S. W. Rep. 87, 95; *S. & N. Alabama R. R.* v. *Morris*, 65 Alabama, 193, 199; *State* v. *Loomis*, 115 Missouri, 307, 314.

The question is distinctly this: Does the State deny to the companies taxed under Act No. 173 the equal protection of the laws, by denying to them the protection of equalization of the assessment of their own property and the property of others by which the rate and amount of their taxation are determined, while it affords to all other taxpayers of the State (corporations and all persons against whom ad valorem taxes are assessed) the protection of the equalization of the assessment of their own property and the property of others, by which the rate and amount of their taxation are determined?

The granting the protection in the one case and denying it in the other is clearly a denial of the equal protection of the laws, and the denial of the protection of equal laws. It is

class legislation. *Railroad and Telephone Companies* v. *Board of Equalizers*, 85 Fed. Rep. 302; *Nashville &c. R. R. Co.* v. *Taylor,* 86 Fed. Rep. 168; *Cotting* v. *Kansas City Stock Yards Co.*, 183 U. S. 79; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Railroad Tax Cases*, 13 Fed. Rep. 722; *Santa Clara County* v. *So. Pac. R. Co.*, 18 Fed. Rep. 385; *Lake Shore & Michigan So. R. R. Co.* v. *Smith*, 173 U. S. 684; *State* v. *Jones*, 51 Ohio St. 492; *Burrows* v. *Brooks*, 113 Michigan, 307; *Stimson* v. *Muskegon Booming Co.*, 100 Michigan, 347; *Park* v. *Detroit Free Press Co.*, 72 Michigan, 560; *Kuhn* v. *Common Council of Detroit*, 70 Michigan, 534; *Brown* v. *Alabama &c. R. Co.*, 87 Alabama, 370; *Pearson* v. *City of Portland*, 69 Maine, 278; *Yick Wo* v. *Hopkins*, 118 U. S. 356; *In re Yot Sang*, 75 Fed. Rep. 983; *Louisville Trust Co.* v. *Stone*, 107 Fed. Rep. 305 306 (C. C. A.).

Said act denies to the companies the equal protection of the laws in this: That under. the general laws of Michigan in the assessment of . the personal property of the inhabitants of the State (other than the companies taxed under said act), the credits of such persons are assessed only so far as they exceed the amounts owed by such persons, whereas Act No. 173 requires the assessment and taxation of the credits of said companies at their cash value without any deduction of the indebtedness owed by them. Cases cited under last point and *Russell* v. *Croy*, 164 Missouri, 69; *Detroit Citizens' St. Ry. Co.* v. *Common Council of Detroit*, 125 Michigan, 673; *Standard Ins. Co.* v. *Assessors*, 95 Michigan, 466; *People* v. *Weaver,* 100 U. S. 539; *Supervisors* v. *Stanley*, 105 U. S. 305.

It neglects the legislative history of Michigan. The tax laws of that State have allowed deductions of debts from credits since 1838.. See Rev. Stat. 1838,. p. 76, title V, ch. 1, § 3; Rev. Stat. 1857, title VIII, ch. 17, § 3; being part of "an act to provide for assessing property at its true value, and for levying and collecting taxes thereon," approved Feb. 14, 1853; Comp. Laws 1871, title VII, ch. 21, § 3; Howell's Statutes (1882), vol. 1, p. 1265; being sec. 2 of "an act to provide

for the assessment of property," approved March 14, 1882; Howell's Statutes (1883–1890), vol. 3, § 1170 a-1; being Act 195 of Public Acts of 1889 (p. 230); Act 200 of Public Acts of 1891, § 2 (p. 280); Act 206 of Public Acts of 1893, § 8; being the first enactment of what is now sec. 3831, subd. 6, of the Comp. Laws of 1897.

This is a legislative interpretation of the constitution for fifty-five years. The people themselves have never moved for a change either of the statutes or of the constitution. And, finally, the judiciary of the State has recognized that rule repeatedly, and never questioned its validity. *First Nat. Bank* v. *Township of St. Joseph,* 46 Michigan, 526, 530; *Beecher* v. *Common Council of Detroit,* 110 Michigan, 456; *Detroit F. & M. I. Co.* v. *Hartz,* 132 Michigan, 518, 520; *Sears* v. *Cottrell,* 5 Michigan, 251, 262; *City of Marquette* v. *M. I. & L. Co.,* 132 Michigan, 130; *Village of Howell* v. *Gordon,* 127 Michigan, 517, 519; *Bears* v. *Grand Rapids,* 129 Michigan, 572, 575; *City of Detroit* v. *Lewis,* 109 Michigan, 155, 159; *Latham* v. *Board of Assessors,* 91 Michigan, 509, 512; *Davenport* v. *Auditor General,* 70 Michigan, 192, 193; *Humphrey* v. *Auditor General,* 70 Michigan, 295; *Attorney General* v. *Supervisors,* 71 Michigan, 16, 22, 26.

This practical construction cannot be disregarded, but must be allowed to control the interpretation to be placed upon the language by this court. *State* v. *Moffett,* 64 Minnesota, 292; *Treasurer of Fayette County* v. *P. & D. Bank,* 47 Ohio St. 503.

Such a rule for deducting debts from credits exists very commonly in the United States; and is deemed important to fair taxation. *Florer* v. *Sheridan,* 137 Indiana, 28; *State* v. *Smith,* 158 Indiana, 543; *Treasurer of Fayette Co.* v. *P. & D. Bank,* 47 Ohio St. 503, 521; *State* v. *Moffett,* 64 Minnesota, 292; *Arosin* v. *L. & N. W. Am. M. Co.,* 83 N. W. Rep. 339; *Pullman State Bank* v. *Mauring,* 51 Pac. Rep. 464; *National Bank of Wellington* v. *Chapman,* 173 U. S. 215.

The taxation under the provisions of the act is not authorized by the power reserved to the State to alter, amend

or repeal the statutes under which the railroad companies were organized. The act applies to the properties which had been previously. acquired by the railroad companies and were possessed and owned by them at the time of the adoption of the act.

It is not questioned that in authorizing the formation of corporations and granting to them their operating franchises, the State may impose such conditions in respect to taking by taxation the properties of the corporations thereafter to be acquired by them as the legislature may from time to time deem proper, but the State under said reserved power to alter or amend does not possess the same power of taxation in respect to the property of the corporations which has been acquired by them under charters which were free from such conditions.

As to property so acquired, the corporations are entitled to the same protection of due process of law, and the equal protection of the laws which natural persons have in respect to their property.

There can be no taxation of such property of the corporations under the reserved power of amendment or alteration which does not afford such protection. *Sinking-Fund Cases,* 99 U. S. 700; *Reagan* v. *Farmers' Loan & Trust Co.,* 154 U. S. 362; *St. Louis &c. R. Co.* v. *Paul,* 173 U. S. 404; *Lake Shore &c. R. Co.* v. *Smith,* 173 U. S. 684; *Louisville &c. Ferry Co.* v. *Kentucky,* 188 U. S. 385; *Greenwood* v. *Freight Co.,* 105 U. S. 13; *Detroit* v. *Detroit &c. Plank Road Co.,* 43 Michigan, 140; *People* v. *Lake Shore &c. R. Co.,* 52 Michigan, 277; *Commonwealth* v. *Essex Co.,* 13 Gray, 239; *People* v. *O'Brien,* 111 N. Y. 1.

*Mr. Charles A. Blair, Mr. Roger Irving Wyckes* and *Mr. Loyal E. Knappen,* with whom *Mr. John E. Bird,* Attorney General of the State of Michigan, and *Mr. Charles E. Townsend* were on the brief, for appellee:

The taxing power of the State is one of its highest attributes of sovereignty and is essential to its continued existence. It

is not derived from, but exists in the States independently of, the United States Constitution and may be exercised to an unlimited extent, upon all property, trades, business and avocations carried on within the territorial boundaries of the State except so far as it has been surrendered to the Federal Government, either expressly or by necessary implication. *Union Pacific R. R. Co.* v. *Peniston*, 18 Wall. 5; *McCulloch* v. *State*, 4 Wheat. 316, 428; *Picard* v. *East Tenn. &c. R. R. Co.*, 130 U. S. 641. It is most essential to the State and most extensive in its operation, and where it exists it recognizes no limit. *Weston* v. *Charleston*, 2 Pet. 466; *Providence Bank* v. *Billings*, 4 Pet. 351, 353.

The Fourteenth Amendment is general. It was not designed or intended to limit the taxing powers of the States but for an entirely different purpose, as is indicated by the history of its enactment and the early decisions—the protection of the newly emancipated negro. *Slaughter House Cases*, 16 Wall. 36; *Delaware Railroad Tax*, 18 Wall. 206.

The presumption of constitutionality following taxing statutes is stronger than applies to laws generally and only where a taxing system clearly and palpably violates the fundamental law will it be held invalid. *Bridge Company* v. *Henderson City*, 173 U. S. 592; *King* v. *Mullins*, 171 U. S. 404; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *San Diego Land & Town Co.* v. *National City*, 174 U. S. 754; *Florida Central &c. R. R. Co.* v. *Reynolds*, 183 U. S. 479; *Central Pacific R. R. Co.* v. *Evans*, 111 Fed. Rep. 76.

The Fourteenth Amendment to the Federal Constitution was not designed or intended to prevent the State from adjusting its system of taxation in all proper and reasonable ways, nor intended to compel it to adopt an iron rule of equality, to prevent the classification of property for purposes of taxation or the imposition of different rates upon different classes; but permits classification for purposes of taxation, the application of different rules of assessment, valuation and review to different classes and the imposition of different rates thereon; and

it is sufficient that all persons within the same class are treated alike and that there is no discrimination in favor of one as against another of the same class. *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232; *Giozza* v. *Tiernan,* 148 U. S. 657, 662; *Adams Express Co.* v. *Ohio,* 165 U. S. 228; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, 293; *Billings* v. *Illinois,* 188 U. S. 97.

The State may distinguish, select and classify objects of legislation, and necessarily this power must have a wide range of discretion. *Merchants & M. Nat. Bank* v. *Pennsylvania,* 167 U. S. 461; *Kentucky Railroad Tax Cases,* 115 U. S. 321; *Home Insurance Co.* v. *New York,* 134 U. S. 594; *Gulf &c. Ry. Co.* v. *Ellis,* 165 U. S. 150; *Clark* v. *Titusville,* 184 U. S. 329; *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 89; *New York* v. *Barker,* 179 U. S. 279; *Charlotte &c. R. R. Co.* v. *Gibbes,* 142 U. S. 386; *Travelers' Life Ins. Co.* v. *Connecticut,* 185 U. S. 364; *Kidd* v. *Alabama,* 188 U. S. 730; *Cook* v. *Marshall County,* 196 U. S. 269; *Coulter* v. *Louisville & N. R. Co.,* 196 U. S. 608, 609; *Field* v. *Barber Asphalt Paving Co.,* 194 U. S. 621, 622.

The limitations upon this power require it to rest upon some difference, bearing a just and reasonable relation to the act in respect to which the classification is proposed, and it is enough that there is no discrimination in favor of one as against another of the same class. *Gulf &c. Ry. Co.* v. *Ellis,* 165 U. S. 155; *Missouri* v. *Lewis,* 101 U. S. 22; *Barbier* v. *Connolly,* 113 U. S. 27; *Duncan* v. *Missouri,* 152 U. S. 377, 382; *Bell's Gap Ry. Co.* v. *Pennsylvania,* 134 U. S. 232; *Home Life Ins. Co.* v. *New York,* 134 U. S. 594; *Pacific Express Co.* v. *Seibert,* 142 U. S. 339.

Different rules apply to, and fix and limit the power of classification in cases of taxation than in other cases. *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 562, 563; *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 89; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283; *Billings* v. *Illinois,* 188 U. S. 102; *Cook* v. *Marshall County,* 196 U. S. 274.

The classification made by Act 173 is based upon such reasonable differences of property, situation, circumstance, or use, as to satisfy the requirements of the Fourteenth Amendment. That the Fourteenth Amendment, as applied to railroad and other public service corporations, permits separate classification of those corporations and their property, for purposes of taxation, must be regarded as placed at rest by the cases, and the laws of the several States have uniformly provided separate and distinct systems and rules of taxation for railroad property, which have been generally sustained. *State Railroad Tax Cases,* 92 U. S. 575; *Kentucky Railroad Tax Cases,* 115 U. S. 321 (81 Kentucky, 492, 512); *Columbus &c. Ry. Co. v. Wright,* 151 U. S. 470; *S. C.,* 89 Georgia, 574; *Charlotte R. R. Co. v. Gibbes,* 142 U. S. 386; *Pittsburgh, C. C. & St. L. Ry. Co. v. Backus,* 154 U. S. 421; *S. C.,* 133 Indiana, 625; *Northern Pacific R. R. Co. v. Barnes,* 2 N. Dak. 310; *McHenry v. Alford,* 168 U. S. 651; *Florida R. R. Co. v. Reynolds,* 183 U. S. 480; *Missouri River R. R. Co. v. Morris,* 7 Kansas, 210; *State Board of Assessors v. Central R. R. Co.,* 48 N. J. L. 146, 278; *Central Iowa Ry. Co. v. Board of Supervisors,* 67 Iowa, 199; *City of Dubuque v. C. D. & M. R. R. Co.,* 47 Iowa, 200; *Owensboro & N. Ry. Co. v. Davies County,* 3 S. W. Rep. (Ky.) 164; *Ames v. People,* 56 Pac. Rep. (Col.) 656; *Yazoo & M. V. R. Co. v. Adams,* 25 So. Rep. 355; *Louisville & N. R. Co. v. Louisville,* 29 S. W. Rep. (Ky.) 865; *St. Louis &c. Ry. Co. v. Worthen,* 52 Arkansas, 529; *Chamberlain v. Walter,* 60 Fed. Rep. 788; *Sawyer v. Dooley,* 21 Nevada, 390, 398; *State v. Severance,* 55 Missouri, 378; Elliott on Railroads, § 740 and cases cited; Cooley on Taxation, 3d ed., 72 *et seq.;* Guthrie on the Fourteenth Amendment, 113 and cases cited.

Railroad corporations possess franchises of a character peculiar to themselves and different from those possessed by other corporations as follows: The right of eminent domain; perpetual existence; the use of public property (Comp. Laws 1897, § 6234); the right of succession to franchises of existing corporations is permitted to purchasing corporations (Comp.

Laws 1897, § 6224); power to enforce connections with other companies; the sale value of franchises is recognized by statute and provision is made for their transfer (Comp. Laws 1897, §§ 6328, 6331, 6333, 6339, 6341).

The intangible value attaching to railroad property differs from that attached to property generally: It exists in more permanent character with railroad than other corporations; the railroad corporation's business is, in a sense, monopolistic; railways are peculiarly benefited by the growth of the territory in which they exist; in railway business, economies are made possible by increased density of traffic.

The railway corporation is engaged in rendering a public service in which the State itself might engage and to which it may attach such limitations as it chooses. *Cotting* v. *Goddard*, 183 U. S. 93, 94.

The property of railroad corporations exists as a connected whole in a large number of municipalities, rendering it impossible to reach its actual value through assessment and taxation as other property is assessed and taxed. *Adams Express Co.* v. *Ohio*, 166 U. S. 219; *S. V. R. R. Co.* v. *Supervisors*, 78 Virginia, 279; Rohrer on Railroads, 1499, § 14; *Dubuque* v. *C. D. & M. Ry.*, 47 Iowa, 202; *State Board of Assessors* v. *Central Railroad*, 48 N. J. L. 322. See briefs in *California & Pacific R. R. Co.*, 127 U. S. 1.

As a public service corporation, the railroad has received public aid to a large extent.

Perpetual existence is denied to other corporations. Mich. Const. § 10, Art. XIV.

The right to alter, amend, or repeal is reserved in the charters under which Michigan railroad corporations do business; this permits different treatment for taxation purposes, as long as fundamental rights are not interfered with. *St. Louis, I. M. & S. Ry. Co.* v. *Paul*, 173 U. S. 408, 409.

The usage and practice in Michigan has always been to tax railroad corporations by a distinct rule or system. Such requirements as proceed within reasonable limits and general

usage are within the discretion of the legislature. *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 94; *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 233; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 294.

The same principles which permit the taxation of railroad corporations by a specific system allow its separate treatment for the purposes of an ad valorem system. The specific tax has been uniformly sustained. *Delaware Railway Tax,* 18 Wall. 206, 231; *McHenry* v. *Alvord,* 168 U. S. 651; *Northern Pacific R. R. Co.* v. *Barnes,* 2 N. Dak. 310, 395.

The rates of railroad companies are, and have always been, regulated by the State. Const., Art. XIXA, § 1; subd. Ninth, § 9, Art. II, Mich. General Railroad Law, § 6234, Comp. Laws 1897.

The differences above pointed out between the property, business, privileges and franchises possessed by railroad corporations from those possessed by other property owners and individuals, are such as to justify their separate classification for taxation or other purposes. The fact of difference appearing, the question of the propriety of the classification is one of policy for the legislature.

Numerous elements exist in the classification made, which justify the legislature in making it: No claim is made in the pleadings or the lower court that property other than railroad property was possessed by complainant or included in its assessment. The purpose of Act 173 is to subject to its provisions, and to the system of taxation which it invokes, only property engaged in railroad business. Secs. 5, 9, Act 173 of 1901. Section 5 of the act construed by the rule that general, following special, words are to be confined to things *ejusdem generis* is limited to railroad property. *American Transportation Co.* v. *Moore,* 5 Michigan, 368; *S. C.,* 24 How. 1; *McDade* v. *People,* 29 Michigan, 50; *Brooks* v. *Cook,* 44 Michigan, 617.

The system of taxation under Act 173 was intended to cover the same property previously taxed specifically. This was

property engaged in railroad business. Secs. 6277, 3830, cl. 8, Comp. Laws 1897, and § 11, Act 235 of 1903.

Classification of railroad property, for the application of different systems of taxation, based on the nature of its use, is proper. *Northern Pac. R. R. Co.* v. *Walker,* 47 Fed. Rep. 685; *McHenry* v. *Alford,* 168 U. S. 668; *Stearns* v. *Minnesota,* 179 U. S. 223.

If property was possessed by complainant, and included in its assessment, which was not engaged in its railroad business, it was its duty to disclose the fact. *Adams Express Co.* v. *Ohio,* 166 U. S. 223.

The railroad property is made a separate class for the purpose of the imposition of a separate and distinct tax. This warrants its being made the subject of a separate system of taxation. *Travelers' Life Ins. Co.* v. *Connecticut,* 185 U. S. 364. Numerous statutes, limited in operation to railroad corporations, have been sustained. *Minneapolis &c. Ry. Co.* v. *Herrick,* 127 U. S. 210; *Tullis* v. *Lake Erie & Western R. R. Co.,* 175 U. S. 348; *Missouri Pacific Ry. Co.* v. *Humes,* 115 U. S. 512; *Louisville & N. Ry. Co.* v. *Tenn. Ry. Com.,* 19 Fed. Rep. 679. See also *Commonwealth* v. *Sharon Coal Co.,* 164 Pa. St. 284, 304; *New York* v. *Barker,* 179 U. S. 279. Railroad companies have always been regarded as special subjects of classification for other purposes than taxation, notwithstanding the more stringent rule of classification for other purposes. *Minneapolis Ry.* v. *Beckwith,* 129 U. S. 26; *Missouri Pacific Ry.* v. *Mackey,* 127 U. S. 205; *Minn. & St. L. Ry.* v. *Herrick,* 127 U. S. 210; *Atchison, T. & S. F. R. R.* v. *Matthews,* 174 U. S. 96; *St. Louis Ry.* v. *Paul,* 173 U. S. 404; *Chicago, B. & Q. Ry.* v. *Chicago,* 166 U. S. 258; *McCandless* v. *Richmond, W. D. R. R.,* 18 L. R. A. 440; *Schoolcraft* v. *Louisville N. R. Co.,* 92 Kentucky, 233; *Georgia R. R. & Banking Co.* v. *Miller,* 90 Georgia, 571; *Minn. & St. L. R. Co.* v. *Emmons,* 149 U. S. 364; *New York & N. E. R. R. Co.* v. *Bristol,* 151 U. S. 556; *Clark* v. *Russell,* 97 Fed. Rep. 900 (C. C. A); *Gulf &c. R. R. Co.* v. *Ellis,* 165 U. S. 150; *Missouri, Kansas &*

*Texas Ry.* v. *May,* 194 U. S. 269; *Central Pacific Ry.* v. *Evans,* 111 Fed. Rep. 76.

Should the property of specific companies, or of specific character, have been classed with that of complainant to render the statute constitutional? The property of sleeping-car companies and the business in which they are engaged are different from those of the railroad company. They do business under different circumstances and conditions and are properly taxed by different systems. *Pacific Express Co.* v. *Seibert,* 44 Fed. Rep. 310, 316; *S. C.,* 142 U. S. 354; *West. Un. Tel. Co.* v. *Indiana,* 165 U. S. 304; *Pullman Co.* v. *Gaines,* 3 Tenn. Ch. 587; *Robbins* v. *Taxing District,* 81 Tennessee, 309; *Gibson County* v. *Pullman Co.,* 42 Fed. Rep. 574. But see *Car Company* v. *Texas,* 64 Texas, 274.

The business of an institution or its property is to be classified for taxation with reference to its entire business, rather than by a comparison with some other business or property which is engaged, in part in, or, in part of, the same business. *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 95; *Cook* v. *Marshall County,* 196 U. S. 274, 275.

The property of interurban street railways forms a different class for taxation purposes than that of the railroad corporation engaged in its railroad business as the use of the property belonging to the two institutions is different. See *Erb* v. *Morasch,* 177 U. S. 584; *Savannah T. & I. Ry.* v. *Mayor,* 198 U. S. 392. Classification distinguishing street from steam railroads has been held valid as based on reasonable differences. *Kentucky Railroad Tax Cases,* 115 U. S. 337. See also *Jersey City* v. *B. Ry. Co.,* 65 N. J. L. 501; *Camden & A. R. Co.* v. *Atlantic City,* 58 N. J. L. 316; *S. C.,* aff'd 41 Atl. Rep. 1116; *Lookout Incline & L. E. R. R.* v. *King,* 59 S. W. Rep. 805; *Cedar Rapids & M. C. Ry.* v. *Cedar Rapids,* 106 Iowa, 476.

Questions of whether, in the construction of particular statutes, street railroads are included within the term "railroads" are considered in many cases which indicate that it has never been considered essential to classify the two to-

gether and that they are in fact different in character. *Mass. Loan & Trust Co.* v. *Hamilton*, 11 Am. & Eng. R. R. Cases (N. S.), 771; *S. C.*, 88 Fed. Rep. 588; *Fidelity Loan & Trust Co.* v. *Douglas*, 104 Iowa, 536; *Cordray* v. *Savannah Ry.*, 30 Am. & Eng. R. R. Cases (N. S.), 286; *Savannah Ry. Co.* v. *Williams*, 30 Am. & Eng. R. R. Cases (N. S.), 279; *State* v. *Duluth Gas & Water Co.*, 76 Minnesota, 76; *Riley* v. *Galveston City Ry. Co.*, 13 Texas Civ. App. 247; *Louisville & P. R. R. Co.* v. *Louisville City Ry. Co.*, 2 Duv. (Ky.) 175; *Front St. Cable Co.* v. *Johnson*, 47 Am. & Eng. R. R. Cases (N. S.), 287.

Street railways have, in Michigan, always been subjected to separate rules of taxation from steam railroads ; the street railway paying its fair proportion of the public burden; the steam railroad enjoying partial exemption through the payment of specific taxes. This, in a new taxing system, justifies different classification of these institutions. *Railroad Co.* v. *Harris*, 99 Tennessee, 706, 707; *Kidd* v. *Alabama*, 188 U. S. 732.

The result of complainant's contention that steam and interurban street railways are to be classified together, is that all steam railroads and street railways must be similarly taxed. The interurban railway may possess elements of both the steam railroad and the street railway. It is a question of legislative judgment to determine with which it will be classed.

Unincorporated railroads in Michigan are not engaged in the same business as is the property of complainant. The only unincorporated railroads which exist here, operate principally in carrying on a private business, such as a lumbering business, and operate the railroad owned only as incident to their principal business and carry freight for other persons, if at all, under conditions dissimilar to those existing and practiced with reference to, or by, the incorporated railroads engaged in the business of common carriers. The entire value of the property of the unincorporated roads is less than $150,000 and their entire annual business for persons other than the owner would be limited to less than $2,000. See

*Mercantile Bank* v. *New York,* 121 U. S. 161, 162. The fact that one class is engaged principally in carrying on business for itself, while the other is engaged almost exclusively in carrying on a general business for others is, of itself, a basis of distinct classification. *Dayton* v. *Coal & Iron Co.,* 99 Tennessee, 578, 581; *Billings* v. *Illinois,* 188 U. S. 102.

That railroad property has always enjoyed a partial exemption from taxation, the present change in the taxing system being for the purpose of bringing it to the same basis for taxation purposes as other property, justifies its separate classification from property which has not enjoyed this partial exemption. *Railroad Co.* v. *Harris,* 99 Tennessee, 706, 707; *Kidd* v. *Alabama,* 188 U. S. 732.

If necessary to classify railroads with sleeping-car companies, interurban street railways and unincorporated railroads for taxation purposes it would be necessary to classify them together for the purpose of police regulations.

Classification among railroads, based upon differences in the amount of gross earnings, in the territory in which they operate, in the length or amount or mileage, etc., has always been permitted. *Commissioners of Railroads* v. *Wabash R. R. Co.,* 123 Michigan, 669; *San Francisco & N. P. Ry. Co.* v. *Board of Equalization,* 60 California, 12; *Chicago, B. & Q.* v. *Iowa,* 94 U. S. 155; *Wellman* v. *Chicago & G. T. Ry. Co.,* 83 Michigan, 592, 599; *Dow* v. *Biedelman,* 125 U. S. 680; *S. C.,* 49 Arkansas, 294, 335; *Tullis* v. *Lake Erie & Western Ry. Co.,* 175 U. S. 351; *St. Louis & I. M. & S. Ry. Co.* v. *Paul,* 173 U. S. 406.

Instead of being injured by the separate classification of these institutions, the complainant, has, in fact, been materially benefited. The classification can only be complained of if complainant has been injured. *Cummings* v. *National Bank,* 101 U. S. 160; *Clark* v. *Kansas City,* 176 U. S. 118; *Supervisors* v. *Stanley,* 105 U. S. 305. The differences between the system applied to complainant's property and these other institutions is rather of form than substance, and

of such character that complainant has waived its right to complain through incorporation under a law reserving the right to alter, amend and repeal. *St. Louis & I. M. & S. Ry. Co.* v. *Paul,* 173 U. S. 406; *Leep* v. *Railway Co.,* 58 Arkansas, 407.

The Fourteenth Amendment permits exemptions. The legislature could have exempted the property of these other institutions absolutely, while taxing that of complainant. The principles permitting this, permit also its taxation at different rates and according to different systems. *Florida Central &c. R. R. Co.* v. *Reynolds,* 183 U. S. 480; *Missouri* v. *Dockery,* 191 U. S. 170, 171; *Billings* v. *Illinois,* 188 U. S. 97; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283; *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 89; *Cook* v. *Marshall County,* 196 U. S. 274.

The Fourteenth Amendment is not violated in permitting the deduction of debts from credits to property owners generally but not permitting the deduction under Act 173. If the classification made by Act 173 is proper, different rules of valuation, assessment and review applying to, and the imposition of different rates of taxation upon, the several classes is permissible and the deduction of debts from credits, in one but not in another class, is proper. *Travelers' Life Ins. Co.* v. *Connecticut,* 185 U. S. 364. Act 173 does not tax the property of the railroad corporation simply because of railroad ownership but because it is engaged in a particular use in the carrying on of a particular business.

Railroad corporations in Michigan are not expressly permitted to own property not engaged in railroad business.

Railroad credits are railroad property and the nature of their use affects them as fully for taxation purposes as does the use of other property affect it. *Detroit, Grand Rapids & Western R. R. Co.* v. *Railroad Com'rs,* 119 Michigan, 132; *Chamberlain* v. *Walter,* 60 Fed. Rep. 788, 793; *Franklin County* v. *Nashville &c. Ry. Co.,* 12 Lea (Tenn.), 521, 537; *Adams Express Co.* v. *Ohio,* 166 U. S. 185; *McHenry* v. *Alford,* 168

U. S. 651, 656. The only credits shown by the record to be possessed by railroad corporations are those arising in the railroad business; presumptively all the property of a corporation is engaged in its business. *Adams Express Co.* v. *Ohio*, 166 U. S. 223; *S. C.*, 165 U. S. 227.

Act 173 makes no specific requirement of the taxation of credits without deduction for debts; if deduction be necessary to render the statute constitutional the statute must be construed in connection with the constitutional requirements as permitting the deduction. *First Nat. Bank* v. *St. Joseph*, 46 Michigan, 529.

The state board of assessors in making this assessment did not include credits. This, taken as a contemporaneous construction, is entitled to consideration. *Attorney General* v. *Glaser*, 102 Michigan, 405.

If the act could be construed as subjecting credits of the corporation, taxed thereunder, to taxation without deduction for indebtedness, and, so construed, invades rights of complainant, such provision could be eliminated without disturbing the statute. *Supervisors* v. *Stanley*, 105 U. S. 305; *Evansville Bank* v. *Britton*, 105 U. S. 322; *Hill* v. *Exchange Bank*, 105 U. S. 319, 322; *Insurance Co.* v. *Board of Assessors*, 95 Michigan, 468; *State* v. *Smiley*, 65 Kansas, 265; *Pullman State Bank* v. *Manring*, 18 Washington, 255; *State* v. *Duluth Gas & Water Co.*, 78 N. W. Rep. (Minn.) 1032.

Complainant made no claim at the time of assessment or on review that it possessed, or that there was included in assessment, credits representing investments apart from the railroad business, nor is there any proof that it possessed such property. It made no complaint of the inclusion of its credits without deduction for debts owed by it, and made no application to the board of review for a deduction on account of indebtedness. It is not open to it now, to claim an unwarranted inclusion of credits. *First Nat. Bank* v. *St. Joseph*, 46 Michigan, 526; *Central Pacific Ry. Co.* v. *California*, 162 U. S. 128; *Pittsburgh &c.* v. *Backus*, 154 U. S. 421; *Town-*

*ship of Caledonia* v. *Rose*, 94 Michigan, 216; *State* v. *Clark*, 79 N. W. 'Rep. (Minn.) 829; *Stanley* v. *Supervisors of Albany*, 121 U. S. 535; *Hepburn* v. *School Directors*, 23 Wall. 480. The deduction of debts from credits is nothing more or less than an exemption. It does not amount to a rule of valuation. The propriety of permitting a deduction of debts from credits to one and not to another class, and the effect of the resulting discrimination, has never, in an applicable case, been passed upon by this court. Mr. Justice Field, sitting in circuit in California, did pass upon a very similar proposition in the cases of *San Mateo County* v. *Southern Pacific*, 13 Fed. Rep. 722; *Santa Clara County* v. *Southern Pacific*, 18 Fed. Rep. 385. These cases differ from that at bar. Here the deduction of debts from credits amounts simply to an exemption to one class which may not be permitted to another. Where the classes are properly formed, it is permissible to give exemptions to one not given to another class. The Michigan system is limited to taxing, by a special system, the property of railroad corporations engaged in their separate and peculiar business. In the California cases the effect was to cause the railroad corporation to bear the burden of taxation of the mortgagees or bondholders. The decisions of Mr. Justice Field are not in accord with the later decisions of this court which have made clear the character and extent of the application of the Fourteenth Amendment in matters of taxation.

Mr. Justice Field's decisions have never been followed in California. The constitutional provision, which he declared unconstitutional, is still followed, and taxes imposed in accordance therewith are paid without protest. *Central Pacific R. R. Co.* v. *California*, 162 U. S. 91, 117. The chronological history of the decisions of Mr. Justice Field, in the *San Mateo* and *Santa Clara County* cases in connection with the *Albany Bank* cases, shows that this court has expressly refused to recognize the decisions of Mr. Justice Field, in opposition to the rule declared in the *Albany Bank* cases. *Supervisors* v.

*Stanley,* 105 U. S. 305; *Hills* v. *Exchange Bank,* 105 U. S. 319, 322; *Evansville Bank* v. *Britton,* 105 U. S. 322; *Supervisors* v. *Stanley,* 121 U. S. 535.

If it is not permissible to grant deduction of debts from credits to one class, unless it is granted to all classes, the result is not the unconstitutionality of Act 173, but rather of the provision of the general tax law, permitting deduction from credits only, and not permitting similar deduction from other personal property. This invalidity might result under the provision of the state constitution requiring uniformity, the provision requiring assessments at cash value and the Fourteenth Amendment. State statutes permitting deduction of debts from credits, not permitting the deduction from other personalty, have been held invalid. *In re Construction of Revenue Law,* 48 N. W. Rep. (S. Dak.) 813; *Citizens St. Ry. Co.* v. *Common Council,* 125 Michigan, 694; *Exchange Bank* v. *Himes,* 3 Ohio St. 1; *San Mateo Co.* v. *So. Pac. R. R. Co.,* 13 Fed. Rep. 722; *Santa Clara Co.* v. *So. Pac. R. R. Co.,* 18 Fed. Rep. 385; *State* v. *Duluth Gas & Water Co.,* 78 N. W. Rep. (Minn.) 1032; *Jacksonville* v. *McConnel,* 12 Illinois, 138; *People's Loan Association* v. *Keith,* 153 Illinois, 609; *People* v. *McCreery,* 34 California, 432; *People* v. *Whortenby,* 38 California, 461; but see *contra, State* v. *Smith,* 63 N. E. Rep. (Ind.) 25; *S. C.,* 64 N. E. Rep. (Ind.) 18, rehearing; *State* v. *Moffett,* 64 Minnesota, 292; *Fayette Co.* v. *Bank,* 10 L. R. A. 196; *Florer* v. *Sheridan,* 137 Indiana, 28; *Central Pac. R. R. Co.* v. *Board of Equalization,* 60 California, 35.

The objection that the rate is dependent upon the action of local assessing officers within whose jurisdiction complainant has no property, before whom it has no right to be heard and against whose acts, if illegal, it has no redress, is based upon a false premise that the local officers fix and determine the rate. This is not the fact. The rate is fixed by the legislature in carrying into effect the constitutional provision. The local officers do no act which affects directly the rate to be applied to complainant. The rate varies from year to

year, with the varying of the average tax rate throughout the State, and when the tax rate in the several municipalities has become a fact of record, this rate is averaged and the result applied in the assessment of the property of complainant and similar companies.

The legislature by statute, and the people by constitutional provision, have the right to impose any tax rate they see fit. The rate imposed, the reasons for its imposition, and the basis of its measurement, are all matters of policy which do not concern the courts and which are within the exclusive jurisdiction of the legislature and the people. *Spencer* v. *Merchant,* 125 U. S. 345; *McCulloch* v. *Maryland,* 4 Wheat. 316, 428; *Providence Bank* v. *Billings,* 4 Pet. 563; *Wharton* v. *School District,* 42 Pa. St. 358; Cooley on Taxation, 2d ed., 343; Guthrie on the Fourteenth Amendment, 95 *et seq.*

The validity of the tax can, in no way, be dependent upon the mode the State may see fit to adopt in fixing the amount for any year. *Home Life Ins. Co.* v. *New York,* 134 U. S. 594, 600; *Maine* v. *Grand Trunk,* 142 U. S. 217, 228; *Wis. & Mich. Ry. Co.* v. *Powers,* 191 U. S. 387; *Snyder* v. *Bettman,* 190 U. S. 254; *Plummer* v. *Coler,* 178 U. S. 115; *Cumberland & Penn. R. R. Co.* v. *State,* 92 Maryland, 668, 690; *Commissioner of Railroads* v. *Wabash R. R. Co.,* 126 Michigan, 115; *Legal Tender Cases,* 12 Wall. 561; *State* v. *Terre Haute,* 130 Indiana, 443; *Society for Savings* v. *Ciote,* 6 Wall. 594, 608; *State* v. *Haworth,* 122 Indiana, 466, 467.

Complainant is not without right to appear before the local reviewing board and be heard upon questions affecting its interests. Michigan Comp. Laws, 1897, §§ 3852, 3853. The authority of a property owner to object upon review to irregularity of assessments, is not limited to those of his own property. *Avery* v. *East Saginaw,* 44 Michigan, 590; *Dundee Mortgage Co.* v. *Charlton,* 32 Fed. Rep. 192, 194; *State* v. *Dodge Co.,* 20 Nebraska, 600; *St. Louis Bridge Co.* v. *People,* 128 Illinois, 428; *Detroit Common Council* v. *Detroit Board of Assessors,* 91 Michigan, 88. The appearance to correct assessments of

the general property, is not required to be before the local officers, but might be before the tax commissioners, who have supervision of all the tax rolls of the State. Act 154 of 1899, §§ 152, 153.

The average rate system is not invalid as compelling payment of taxes by complainant based on expenditures of local governments, whose benefits it does not share, while other property owners pay taxes based on expenditures of municipalities in which their property is located.

The plenary authority of the legislature to use any basis of measurement it sees fit, in fixing the tax rate, is controlling here. The railroad corporations are taxed for a different purpose than property generally. The tax imposed is a distinct and particular state tax. *Pingree* v. *Auditor General,* 120 Michigan, 102.

Only a certain amount each year is required to maintain the State and its municipalities. The portion of this burden paid by one class, is not borne by another and the average rate system operates to equalize the burden among the classes. The complainant and all other railroad companies benefit particularly from disbursements made in the local municipalities for municipal improvements and their tax rate is very properly proportioned to that borne in the local municipalities.

The fact that the burdens of taxation as compared with the benefits, are unequally shared, does not invalidate the taxes. If property receives any benefit, from a disbursement, however small, it can be made to share equally in the taxation, and this, though its property is not in the municipality making the disbursement for which the tax is levied, and though some other property has been more directly benefited. *Foster* v. *Pryor,* 189 U. S. 325, 331; *Wagoner* v. *Evans,* 170 U. S. 592; *Thomas* v. *Gay,* 169 U. S. 264; *Kelly* v. *Pittsburgh,* 104 U. S. 78. The State has determined that the railroad corporations receive protection and benefits from its laws equal in amount to the expenditures and taxes of the several municipalities

for state, county, township, school and municipal purposes and equal to that received by other property throughout the State. This is conclusive upon this court. *French* v. *Barber Asphalt Co.*, 181 U. S. 341, 344; *Parsons* v. *District of Columbia*, 170 U. S. 45; *Chadwick* v. *Kelly*, 187 U. S. 544.

The complainant is not denied the right of hearing on the rate of taxation, which is accorded to others. The function of the board of assessors in determining the tax rate, was purely ministerial, for the purpose of reducing to a certainty the rate fixed in the constitution and statutes. *Board of Education* v. *State Board of Assessors*, 133 Michigan, 116. In the performance of ministerial functions, there is no necessity for hearing, as a hearing could not affect the result. That result must, in all instances, be the same, where the method pointed out by the statute is carried out. *Hagar* v. *Reclamation District*, 111 U. S. 708, 709; *Emery* v. *Keokuk*, 72 Iowa, 704; *Gillette* v. *Denver*, 21 Fed. Rep. 824; *Reclamation District* v. *Phillips*, 108 California, 314; *Hoge* v. *Muscatine County*, 196 U. S. 280. The legislature designated the class and the rate of taxation it shall bear; there is no apportionment among the members of the class and no opportunity of hearing upon the rate is required to be given; full hearing has been accorded upon the assessments. *Spencer* v. *Merchant*, 125 U. S. 353, 354; *Fallbrook Irrigation Dist.* v. *Bradley*, 164 U. S. 174; *Walston* v. *Nevin*, 128 U. S. 582; *Paulsen* v. *Portland*, 149 U. S. 39, 40; *Nottage* v. *Portland*, 35 Oregon, 553, 554; Guthrie on the Fourteenth Amendment, 96. If the state board of assessors, in reaching the rate, pursues a wrong method or assumes an excess of authority, the property owner affected by such erroneous procurement of the rate is entitled to redress his or its grievances in the courts. This satisfies all constitutional requirements. *McMillen* v. *Anderson*, 95 U. S. 37; *Glidden* v. *Harrington*, 189 U. S. 259, 260.

The system, under Act 173, is capable of subjecting both classes to equality of taxation as fully as any that could be devised. Inequality, resulting from a system reasonably de-

signed to secure equality, is without redress. *Travelers' Life Ins. Co.* v. *Connecticut,* 185 U. S. 364, 371; *Tappan* v. *Merchants' Nat. Bank,* 19 Wall. 490, 504; *State Railroad Tax Cases,* 92 U. S. 575, 612; *Merchants' & Manufacturers Bank* v. *Pennsylvania,* 167 U. S. 461; *Atchison, T. & S. F. R. R.* v. *Matthews,* 174 U. S. 96.

. If the act makes a valid classification in selecting the railroad and other property subject thereto, for the purpose of applying to it a different rule of taxation than is applied to other property, there is no requirement that it impose the same rate on the property of both classes. *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283; *Clark* v. *Titusville,* 184 U. S. 329; *Bell's Gap &c. R. R. Co.* v. *Pennsylvania,* 134 U. S. 232; *Home Life Ins. Co.* v. *New York,* 134 U. S. 594; *Pacific Express Co.* v. *Seibert,* 142 U. S. 339, 351; Brannon on the Fourteenth Amendment, 340, 352; Guthrie on the Fourteenth Amendment, 128, 130, 131. If, in the administration of the law, any inequality results, that defect of administration does not invalidate the act itself; it is only where officers charged with the administration of the law are moved by corrupt motives, that courts give relief from illegal assessments. *Cummings* v. *National Bank,* 101 U. S. 153, 161; *Central Railroad Co.* v. *State Board of Assessors,* 48 N. J. L. 1, 7; *Dundee Mortgage Co.* v. *School Dist.,* 21 Fed. Rep. 151, 155, 156; *Wagoner* v. *Loomis,* 37 Ohio St. 571, 578, 580; *Taylor* v. *Louisville & N. R. Co.,* 88 Fed. Rep. 350; *Muskegon* v. *Boyce,* 123 Michigan, 535.

The neglect to provide for equalization of the assessments of the property taxed under Act 173, in the manner given to other property, does not violate the Fourteenth Amendment.

The classification made by Act 173 is proper and the difference in the rule of equalization applied to different classes is no greater than applied and sustained in many cases. *State Railroad Tax Cases,* 92 U. S. 575; *Columbus R. R. Co.* v. *Wright,* 151 U. S. 470; *Pitts., C. C. & St. L. R. R. Co.* v. *Backus,* 154

U. S. 421; *Kentucky Railroad Tax Cases*, 115 U. S. 321; *Florida v. Reynolds*, 183 U. S. 480; *Chamberlain* v. *Walter*, 60 Fed. Rep. 788; *Louisville & Nashville R. Co.* v. *Louisville*, 29 S. W. Rep. (Ky.) 865; *Charlotte R. R. Co.* v. *Gibbes*, 142 U. S. 386; *Northern Pacific R. Co.* v. *Barnes*, 2 N. Dak. 310, 395–397; *McHenry* v. *Alford*, 168 U. S. 651; *Central Iowa Railroad Co.* v. *Supervisors*, 67 Iowa, 199; *St. Louis &c. Railroad Co.* v. *Wrothen*, 52 Arkansas, 529; *New York* v. *Barker*, 179 U. S. 286.

The different purposes for which, and methods by which, taxation of the different classes is had, justifies different treatment in regard to equalization.

There is no occasion for equalization of the character accorded in Michigan between property taxed under Act 173 and that taxed generally. The equalization is not for the purpose of affecting values, but to equitably distribute the taxes simultaneously spread. No taxes are spread simultaneously upon the railroad and general property. Equalization in Michigan does not deal with under-valuation. This condition is corrected by reviews, in which railroad property fully participates. The men constituting the state board of assessors have supervision of all the assessments of the State with the authority to bring them to cash value; this dispenses with all necessity for equalization.

Equalization, so far as it affects individual rights and interests, is as fully given to railroads as to other property. It is only a matter of right in cases of fraudulent under-valuation; there the courts furnish it.

The Fourteenth Amendment does not require a legislative determination of the needs of a particular year as a prerequisite to the validity of a tax; nor does the state constitution require it.

Taxation of railway companies by the average rate is not novel or confined to Michigan.

Such systems are in force in New Hampshire, Massachusetts, Missouri and Wisconsin.

It is unnecessary for this act to state the tax or its object.
The tax is in reality fixed in the constitution itself.   The con-
stitutional provision, requiring the statement of the tax and
its object applies only to taxes recurring annually and those
imposed generally upon the entire property of the State.
*Matter of McPherson,* 104 N. Y. 306, 318; *People* v. *Fire Assn.
of Philadelphia,* 92 N. Y. 311, 327; *Jones* v. *Chamberlain,* 109
N. Y. 100; *Ford's Petition,* 6 Lans. (N. Y.) 97; *Guest* v.
*Brooklyn,* 8 Hun, 97.   The requirement that a law imposing a
tax shall state its object does not apply where the constitu-
tion fixes the object.   *Walcott* v. *People,* 17 Michigan, 68;
*Union Trust Co.* v. *Wayne Probate Judge,* 125 Michigan, 487;
*Pingree* v. *Auditor General,* 120 Michigan, 108, 109.

The constitutional provision and statute do not deprive of
property without due process of law.   As applied to matters
of taxation, it has been uniformly held that any system, which
gives to the party any means of questioning the validity or
amount of the tax at some stage of the proceeding, either
before it is determined and fixed, or to contest subsequent
proceedings for collection, is due process.   Brannon on Four-
teenth Amendment, 349, 350, 351; *State Railroad Tax Cases,*
92 U. S. 575, 610; *McMillen* v. *Anderson,* 95 U. S. 37; *Ken-
tucky Railroad Tax Cases,* 115 U. S. 321; *Winona R. R.* v.
*Minnesota,* 159 U. S. 537; *Pittsburgh, C. C. & St. L. Ry.* v.
*Board of Public Works,* 172 U. S. 45; *Weyerhaueser* v. *Minne-
sota,* 176 U. S. 556, 557; *Voigt* v. *Detroit,* 184 U. S. 122; *King*
v. *Portland City,* 184 U. S. 69, 70; *Turpin* v. *Lemon,* 187 U. S.
58; *Glidden* v. *Harrington,* 189 U. S. 259, 260; *Leigh* v. *Green,*
193 U. S. 88; *Cass Farm Company* v. *Detroit,* 181 U. S. 396;
*French* v. *Barber Asphalt Co.,* 181 U. S. 324; *Tonawanda* v.
*Lyon,* 181 U. S. 389; *Detroit* v. *Parker,* 181 U. S. 399.

The statute gives the necessary opportunity for and notice
of hearing.   The corporations taxed are permitted to make
report of the character, description and value of their property
and after assessments based upon such reports, review is had,
at which every person or company interested is entitled to be

heard; the statute fixing the time and place at which this review shall take place.

The premise assumed by complainant—that its taxes are not imposed by a representative legislature—is erroneous. The rate is fixed by the constitution and complainant has had full representation. The right of suffrage is not essential to the validity of taxing statutes. Cooley on Taxation, 3d ed., 96; *Thomas* v. *Gay*, 169 U. S. 264, 275; *Wheeler* v. *Wall*, 6 Allen (Mass.), 558; *Smith* v. *Macon*, 20 Arkansas, 17.

The guaranty, to every State, of a republican form of government, was not a guaranty of any rigidly fixed form of government, but of one similar to that existing in the several States at the time of the adoption of the Constitution. Story on Constitution, 5th ed., § 1841; Cooley, Const. Lim., 7th ed., 238; *Minor* v. *Happersett*, 21 Wall. 162, 175. The guaranty was not intended to guard individual rights and interests but was to the States, as States. *Documentary History*, Const. of U. S., pp. 19, 64, 108, 123, 370, 371, 322, 456, 651, 652, 732; Cooley, Const. Lim., 7th ed., 45; *Kadderly* v. *Portland*, 74 Pac. Rep. 710, 719; Story on Constitution, 5th ed., § 1815; Tucker on Constitution, 638. Questions of whether a government exists or is republican in form are not properly presented to the judiciary. The nature of the thing attempted to be secured, the means, methods and action and judgment for securing it are political in character, to be determined by Congress and not the courts. *Luther* v. *Borden*, 7 How. 39, 42, 47, 57; *White* v. *Hart*, 13 Wall. 649, 652; Tucker on Constitution, 637, 638; Story on Constitution (Cooley's note), 5th ed.) 593; Cooley, Const. Lim., 7th ed., 237, 238.

No hearing on the rate of taxation is essential, as the rate is fixed in the constitution and by the legislature in the exercise of governmental powers. *Spencer* v. *Merchant*, 125 U. S. 345; *Hagar* v. *Reclamation District*, 111 U. S. 701; *French* v. *Barber Asphalt Co.*, 181 U. S. 341, 344; *Williams* v. *Eggleston*, 170 U. S. 311; *Parsons* v. *District of Columbia*, 170 U. S. 45, 50;

*Paulsen* v. *Portland,* 149 U. S. 39, 40; Judson on Taxation, § 377.

Complainant has not averred or shown any injury from the application of this method. As a prerequisite to injunction to restrain the collection of taxes, it must make clear that it ought not, in equity, to pay taxes from which it asks relief. *Mercantile National Bank* v. *Hubbard,* 98 Fed. Rep. 465, 469; *Musselman* v. *Logansport,* 29 Indiana, 533; *Cowell* v. *Doub,* 12 California, 273; *Anderson* v. *City of Mayfield,* 93 Kentucky, 230, 237; *Streight* v. *Durham,* 10 Oklahoma, 361, 373; *Dundy* v. *Richardson Co. Comrs.,* 8 Nebraska, 508, 519; *South Platte Land Co.* v. *Crete,* 11 Nebraska, 344, 347; *Jones* v. *Summer,* 27 Indiana, 511; *Porter* v. *R. R. I. & St. L. R. Co.,* 76 Illinois, 596; *Conway* v. *Younkin,* 28 Iowa, 295; *Warden* v. *Supervisors,* 14 Wisconsin, 618; *Miltimore* v. *Supervisors,* 15 Wisconsin, 10; Cooley on Taxation, 3d ed., 1443.

Interstate commerce is not interfered with. While the States have no authority to interfere with transportation between the States, to impose any restraint upon the right, privilege, occupation or business of engaging therein or to burden the receipts therefrom, the rule is now placed beyond question, that they have full authority to tax property used in, and instrumentalities of, interstate commerce, regardless of such use, or that the large portion of the value upon which tax is laid originates in such interstate use.

This right has been sustained as to railroads: *Pittsburgh, C. C. & St. L. Ry. Co.* v. *Backus,* 154 U. S. 421; *Cleveland, C. C. & St. L. Ry. Co.* v. *Backus,* 154 U. S. 439; *Delaware Railroad Tax,* 18 Wall. 206, 231, 232. Cars: *Union Transit Co.* v. *Lynch,* 177 U. S. 149; *American Transit Co.* v. *Hall,* 174 U. S. 70; *S. C.,* 24 Colorado, 300; *Pullman Co.* v. *Pennsylvania,* 141 U. S. 19; *Marye* v. *B. & O. R. R. Co.,* 127 U. S. 117. Bridges: *Bridge Co.* v. *Henderson City,* 173 U. S. 592, 623; *Pittsburgh &c. Ry. Co.* v. *Board of Public Works,* 172 U. S. 32; *Henderson Bridge Company* v. *Henderson City,* 141 U. S. 689. Express companies' property: *Adams Express Co.* v. *Ohio,* 165

U. S. 194; *Adams Express Co.* v. *Ohio,* 166 U. S. 185; *Adams Express Co.* v. *Kentucky,* 166 U. S. 171, 180; *Fargo* v. *Hart,* 193 U. S. 490. Telegraph lines and property: *Western Union Tel. Co.* v. *Missouri,* 190 U. S. 412; *Atlantic & Pacific Tel. Co.* v. *Philadelphia,* 190 U. S. 160, 163; *West. Un. Tel. Co.* v. *Taggart,* 163 U. S. 1; *Postal Tel. & Cable Co.* v. *Adams,* 155 U. S. 688, 697; *West. Un. Tel. Co.* v. *Massachusetts,* 125 U. S. 590; *West. Un. Tel. Co.* v. *Massachusetts,* 141 U. S. 40. Steamships: *Transportation Company* v. *Wheeling,* 99 U. S. 273; *Moran* v. *New.Orleans,* 112 U. S. 69.

The rule extends so far as to permit the States, where taxing property engaged in, and instrumentalities of, interstate commerce, to include the intangible value resulting from interstate commerce. Cases *supra* and *Central Pacific R. R. Co.* v. *California,* 162 U. S. 91; *New York, L. E. & W. R. R. Co.* v. *Pennsylvania,* 158 U. S. 431, 437; *Railway Co.* v. *Backus,* 154 U. S. 446, 447.

The attitude of this court has been to sustain, if possible, statutes apparently imposing a burden on interstate transportation, or receipts therefrom. Where it has been possible to say that the tax, while not directly imposed on, was on account of, property, the corporation owned and which received protection of the laws, within the State, the court has done so and has sustained taxes where the amount was determined by reference to.receipts, capital stock, or other elements. Cases *supra* and *New York, L. E. & W. R. R. Co.* v. *Pennsylvania,* 158 U. S. 431, 438, 439; *Maine* v. *Grand Trunk Ry. Co.,* 142 U. S. 217. See also *Fairbank* v. *United States,* 181 U. S. 297; *State Tax on Railway Gross Receipts,* 15 Wall. 284.

The mileage basis of apportionment prescribed in the statute is proper. A railroad system may, for purposes of taxation, be treated and valued as a unit, the whole contributing to the value of every part; and where it extends into several States, the value may be apportioned among the several States, on a mileage basis. Statutes using this basis of apportionment

are in force in many States. · *Adams Express Co.* v. *Kentucky,*
166 U. S. 171, 180.

To the use of a strict mileage basis there are only two ex-
ceptions; it cannot be applied: First, so as to bring within ·
the taxing State, property not connected with or a part of the
railroad business and which has an actual *situs* in some other
State, nor, second, where, by reason of the existence ·of valu-
able terminals in one State, which contribute to and greatly
enhance the value of the system, its application would be un-
fair, as bringing within the taxing State a greater proportion
of the· value than that State would equitably be entitled to.
Cases *supra.*

The statute does not require apportionment among the
States on an absolute mileage basis, but permits apportion-
ment, in accordance with the fact, on the judgment of the
board of assessors.

The act permits the board of assessors to exercise their dis-
cretion in making the apportionment; that discretion, when
once exercised, is absolute and cannot be overcome except in
cases of fraud. Cases *supra* and *Maish* v. *Arizona,* 164 U. S.
611; *McLeod* v. *Receiver,* 71 Fed. Rep. 458.

The system of taxation, invoked by Act 173, as applied to
railroad corporations, is a proper exercise of the right to amend
corporate charters. The act became a part of the charters
and governing laws of Michigan railroad corporations. *New·
York & New Eng. R. R. Co.'s Appeal,* 62 Connecticut, 527,
538; *Columbia &c. R. R. Co.* v. *Gibbes,* 24 S. Car. 60, 73; *Ala-
bama & V. Ry. Co.* v. *Odeneal,* 73 Mississippi, 34; *St. L., I. M.
& S. Ry. Co.* v. *Paul,* 64 Arkansas, 83; *S. C.,* 173 U. S. 404;
*Northern Central Ry. Co.* v. *Maryland,* 187 U. S. 258; *State* v.
*Northern Central Ry. Co.,* 90 Maryland, 447, 469; *Bangor,
Oldtown & Milford R. Co.* v. *Smith,* 47 Maine, 34; *Durand* v.
*N. H. & N. Co.,* 42 Connecticut, 211, 223; *Roxbury* v. *Boston
&c. R. R. Co.,* 60 Massachusetts, 432; *St. Albans* v. *Car Co.,*
57 Vermont, 82; *Tomlinson* v. *Jessup,* 15 Wall. 454, 457; *Leep*
v. *Railway Co.,* 58 Arkansas, 407; *Stearns* v. *Minnesota,* 179

U. S. 260 (dissenting opinion); *Penna. R. R. Co.* v. *Duncan,* 111 Pa. St. 352. The general railroad law and Act 173 are *pari materia,* to be read and construed as one enactment. *Chicago, R. I. & P. Ry. Co.* v. *Zernecke,* 59 Nebraska, 689, 696; *McHenry* v. *Brett,* 9 N. Dak. 68, 70; *Dennison* v. *Allen,* 106 Michigan, 295; *Shannon* v. *People,* 5 Michigan, 36, 50; *Ryan* v. *Carter,* 93 U. S. 78, 84; *Alexander* v. *Mayor,* 5 Cranch, 7; *Hendrix* v. *Rieman,* 6 Nebraska, 517, 522; Black on Interpretation of Laws, p. 204, § 86.

The Federal cases uphold the right of the State to repeal, alter or amend corporate charters where the right to do so is reserved. Vested rights cannot be impaired under such a reserved power, but the power may be exercised and to almost any extent, to carry into effect the original purpose of the grant, to protect the rights of the public and the corporators, or to promote due administration of the affairs of the corporation. *Union Passenger Ry. Co.* v. *Philadelphia,* 101 U. S. 528; *Hoge* v. *Railway Co.,* 99 U. S. 348, 351; *Greenwood* v. *Freight Co.,* 105 U. S. 13; *Railroad Co.* v. *Maine,* 96 U. S. 499; *Louisville Water Co.* v. *Clark,* 143 U. S. 10, and cases cited; *Sinking Fund Cases,* 99 U. S. 700; *Pearsall* v. *Great Northern Ry.,* 161 U. S. 663; *Covington* v. *Kentucky,* 173 U. S. 232; *Citizens' Savings Bank* v. *Owensboro,* 173 U. S. 636; *Tomlinson* v. *Jessup,* 15 Wall. 454; *United States* v. *Union Pacific Ry.,* 160 U. S. 37. See also *Miller* v. *State,* 15 Wall. 478, 499; *Holyoke Co.* v. *Lyman,* 15 Wall. 500; *Pennsylvania College Cases,* 13 Wall. 190; *Spring Valley Water Works* v. *Schottler,* 110 U. S. 347; *Bienville Water Supply Co.* v. *Mobile,* 186 U. S. 222; *St. L., I. M. & S. Ry. Co.* v. *Paul,* 173 U. S. 404; *New Jersey* v. *Yard,* 95 U. S. 104; *Gas Light Co.* v. *Hamilton City,* 146 U. S. 271.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The unconstitutionality of a statute may depend upon its conflict with the constitution of the State or with that of the

United States. If conflict with the state constitution is the sole ground of attack, the Supreme Court of the State is the final authority, *Merchants' Bank* v. *Pennsylvania,* 167 U. S. 461, and cases cited in the opinion, while in the other case the ultimate decision rests with this court. The validity of this act has not been directly presented to or determined by the state court, but the first attack by the parties interested is made in the Federal court and by this suit, and conflict with both constitutions is alleged. Undoubtedly a Federal court has the jurisdiction, and when the question is properly presented it may often become its duty to pass upon an alleged conflict between a statute and the state constitution, even before the question has been considered by the state tribunals. All objections to the validity of the act, whether springing out of the state or of the Federal Constitution, may be presented in a single suit and call for consideration and determination. At the same time the Federal courts will be reluctant to adjudge a state statute to be in conflict with the state constitution before that question has been considered by the state tribunals. Especially is this true when the statute is one affecting the revenues of the State, and therefore of general public interest. *Coulter* v. *Louisville & Nashville R. R. Co.,* 196 U. S. 599, 609. And this reluctance becomes more imperative when the statute has been before the highest court of the State and a decision rendered upon the assumption that it is valid, and this, although the direct question of validity was not presented nor determined.

In the case at bar the rate of taxation imposed upon the railroad and other corporate property is the average rate of taxation upon other property subject to ad valorem taxes, and that average rate is ascertained by dividing the total tax levy on all such property by the value of the property. In *Board of Education* v. *State Assessors,* 133 Michigan, 116, the following case arising under the statute was presented (p. 117):

"This is an application for a mandamus. It sets out, in substance, that the state board of assessors, in levying the tax upon the railroad property of this State, has assumed to fix the rate

of taxation by dividing the total tax levy on all property other than railroad property by the value of such other property as determined by the defendant board, by adding to the actual assessed value of such property, as fixed by the local assessors and by the board of state tax commissioners acting under the authority of the law relating to the assessment of taxes, the sum of $296,748,142, thus making the aggregate divisor in determining the rate of taxation that much in excess of the assessed valuation, thereby reducing the rate to be levied upon the railroad property of the State, and thus reducing the amount which the relator would receive as its proportion of the tax assessed against railroad property by a very substantial sum."

This application was sustained, the court holding that the state board of assessors had no power to increase the value as returned to them by the local assessors and board of state tax commissioners, and saying (p. 119):

"A fair reading of this language of the statute, we think, leads to the conclusion that the board of assessors has imposed upon it the duty, ministerial in character, of determining by a computation from *data*, which the law provides for placing in its hands, the rate of taxation which other property in the State is subjected to, as it appears by assessment rolls which are supposed to contain an accurate and true assessment of all property at its full cash value."

While this case did not directly determine the constitutionality of the statute, a fair implication is that it was not regarded as obviously in conflict with the state constitution, for in that event the court would scarcely have taken time to consider the validity of proceedings under its authority.

We, therefore, proceed to inquire whether the provisions of this act and the method of taxation therein prescribed are open to any constitutional objection. We have had frequent occasion to consider questions of state taxation in the light of the Federal Constitution, and the scope and limits of National interference are well settled. There is no general supervision

on the part of the Nation over state taxation, and in respect to the latter the State'has, speaking generally, the freedom of a sovereign both as to objects and methods. It was well said by Judge Wanty, delivering the opinion of the Circuit Court in this case (p. 232):

"There can at this time be no question, after the frequent and uniform expressions of the Federal Supreme Court, that it was not designed by the Fourteenth Amendment to the Constitution to prevent a State from changing its system of taxation in all proper and reasonable ways, nor to compel the States to adopt an ironclad rule of equality, to prevent the classification of property for purposes of taxation, or the imposition of different rates upon different classes. It is enough that there is no discrimination in favor of one as against another of the same class, and the method for the assessment and collection of the tax is not inconsistent with natural justice. *Bell's Gap Railroad Company* v. *Pennsylvania,* 134 U. S. 232; *Giozza* v. *Tiernan,* 148 U. S. 657, 662; *Adams Express Company* v. *Ohio,* 165 U. S. 194, 228; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283; *Billings* v. *Illinois,* 188 U. S. 97; *Merchants' Bank* v. *Pennsylvania,* 167 U. S. 461; *Kentucky Railroad Tax Cases,* 115 U. S. 321; *Home Insurance Company* v. *New York State,* 134 U. S. 594; *Gulf, Colorado & Santa Fe Railroad Company* v. *Ellis,* 165 U. S. 150; *Clark* v. *Titusville,* 184 U. S. 329; *American Sugar Refining Company* v. *Louisiana,* 179 U. S. 89; *New York State* v. *Barker,* 179 U. S. 279; *Charlotte &c. Railway Company* v. *Gibbes,* 142 U. S. 386; *Travelers' Insurance Company* v. *Connecticut,* 185 U. S. 364; *Kidd* v. *Alabama,* 188 U. S. 730; *Turpin* v. *Lemon,* 187 U. S. 51; *Florida &c. Railroad Company* v. *Reynolds,* 183 U. S. 471."

The first and principal matter of attack is the "average rate." It is contended that the fixing of the rate of taxation is a legislative function; that in ascertaining the average rate by the method described there is no exercise of the legislative judgment, but that it is determined by the action of the various local assessing and taxing boards, who, though charged with no

duty of inquiry as to the necessities of the State or the proper rate of taxation of railroad property, are in fact the only officials exercising any discretion and judgment.

There might be a question whether, even if there were a clear delegation of legislative functions to other departments of the state government, it would be void under the Federal Constitution. Whatever, in view of the distinct grant in the Federal Constitution to the. President, Congress and the Judiciary of separately the executive, legislative and judicial powers of the Nation, may be the power of Congress in the delegation of legislative functions, a very different question is presented when the restrictions of the Federal Constitution are invoked to restrain like action in a State. Crimes against the Nation must be prosecuted by indictment, yet a State may proceed by information. Suppose a State by its constitution grants legislative functions to the executive, or to the judiciary, what provision of the Federal Constitution will nullify the action? Will the grant work an abandonment of a republican form of Government, or be a denial of due process, or equal protection?

But it is unnecessary to enter into a discussion of this question, for in the case at bar there is no abandonment by the legislature of its functions in respect to taxation. The statute prescribes as the rate of taxation upon railroad property the average rate of taxation on all other property subject to ad valorem taxes. It provides the most direct way for ascertaining such average rate, deducing it from a consideration of all the other rates. No authority is given to the local assessors to apply their judgment to the question of the railroad rate. Their authority in respect to the matter of taxation is precisely the same as it was before and independently of this statute. Their duty is to act according to their judgments in respect to local taxes committed to their charge. When they have finished their action, taken, as it must be assumed to have been, in conscientious discharge of the duties assigned, from it by a simple mathematical calculation the average rate of taxation is determined. If the legislature should be convened after they

have finished their action and then prescribe the average rate thus mathematically deduced as the rate of railroad taxation, no question could be made of its validity. It would be obviously a legislative determination of the rate of taxation. Is it any the less a legislative determination that it assumes that the various local officials will discharge their duties honestly and fairly, with reference to local necessities, and, independently of the effect upon the railroad rate, and directs that the mathematical computation be made by a board of ministerial officers, and thus made shall become the railroad rate of taxation? · Why is it necessary that the legislature be convened to add its formal approval of the integrity of the action of the local officers? May it not intrust the mathematical computation to the state board of assessors, and if so, may it not likewise act upon the assumption that the local assessors will discharge their duties with an eye single to those duties and irrespective of the effect upon the railroad rate? It is true there is a possibility that some local board may be actuated by other than a sense of duty to the community for which it is acting and have a thought of the ultimate effect upon the railroad rate. There is always a possibility of misconduct on the part of officials, but legislation would be seriously hindered if it may not proceed upon the assumption of a proper discharge of their duties by the varous officials. And it must be remembered that, in view of the vast multitude of local taxing boards (as stated in one of the briefs of counsel for appellant there are about 1,300 local assessment districts), the action of any single board could have but little influence upon the railroad rate. Beyond the assumption that these local officers will act from a sense of duty is the further fact that their action affects directly and principally the special communities for which they act, and that, generally speaking, is a sufficient guarantee. As said by Mr. Chief Justice Marshall, in *McCulloch* v. *Maryland,* 4 Wheat. 316, 428:

"The only security against the abuse of this power, is found in the structure of the Government itself. In imposing a tax

the legislature acts upon its constituents. This is in general a sufficient security against erroneous and oppressive taxation."

And again, in *Providence Bank* v. *Billings*, 4 Pet. 514, 563:

"This vital power may be abused; but the Constitution of the United States was not intended to furnish the corrective for every abuse of power which may be committed by the state governments. The interest, wisdom and justice of the representative body, and its relations with its constituents, furnish the only security where there is no express contract, against unjust and excessive taxation; as well as against unwise legislation generally."

*Maine* v. *Grand Trunk Railway Company*, 142 U. S. 217, is worthy of consideration on this question of legislative determination. The legislature of Maine graded the rate of an excise tax imposed upon railroads by the amount of their gross transportation receipts, and provided that when a railroad was partly within and partly without the State the gross receipts chargeable to the road within the State should be ascertained on the mileage basis. The court below held that as the Grand Trunk Railroad was partly within and partly without the State of Maine, the imposition of the tax was a regulation of commerce, and therefore in conflict with the exclusive power of Congress over interstate and foreign commerce; and rendered judgment for the company.

But this court, reversing that judgment, held that the reference to the receipts was simply to ascertain the value of the business done by the corporation, and thus obtain a reasonable conclusion as to the amount of tax which should be levied, saying (p. 229):

"If the amount ascertained were specifically imposed as the tax, no objection to its validity would be pretended. And if the inquiry of the State as to the value of the privilege were limited to receipts of certain past years instead of the year in which the tax is collected, it is conceded that the validity of the tax would not be affected; and if not, we do not see how

a reference to the results of any other year could affect its character."

See also *Home Insurance Company* v. *New York*, 134 U. S. 594, and cases cited in the opinion. Of course, a passenger on the Grand Trunk Railroad knew that the fare he was paying was increasing the gross receipts, and therefore indirectly affecting the amount of the tax collectible under the statute. But it was not to be assumed that he would travel and pay fare with that object in view. No more can it be assumed in the present case that the local taxing officers, although knowing that an increase of their local tax levy will increase the tax rate upon railroads, will be led by that knowledge to forget their single duty to the community for which they are acting. No one pays money for the mere sake of compelling others to pay. Some personal advantage must be intended. No more will local tax officers levy a tax upon their neighbors, those who have placed them in position, for the mere sake of increasing the tax burden upon railroads, especially when the local levy is not followed by an equal increase in the amount of the burden cast upon railroads and but a trifling fraction of that increase inures, either directly or indirectly, to the benefit of the taxpayers of the locality. The total value of other property in Michigan subject to ad valorem taxes was, according to the record, in the neighborhood of $1,500,000,000. A tax levy in the city of Detroit for local purposes of $1,500,000 would, therefore, increase the rate of taxation on railroad property only one mill, and that increase would profit Detroit but little, as the railroad tax is appropriated for state purposes only.

It may be laid down as a general proposition that where a legislature enacts a specific rule for fixing a rate of taxation, by which rule the rate is mathematically deduced from facts and events occurring within the year and created without reference to the matter of that rate, there is no abdication of the legislative function, but, on the contrary, a direct legislative determination of the rate.

Again, it seems more reasonable that the average rate should

be fixed by this mathematical computation from the other rates already established than for the legislature to prescribe in advance that which it may hope will be such rate. In the one case the exact average is determined; in the other an estimate is made, which may turn out to be more or less than the average.

While the peculiar method of ascertaining the average rate prescribed by this statute may be new, yet the application of an average rate to the taxation of railroads is not new, nor confined to Michigan. See § 1, chap. 64, Public Statutes and Session Laws of New Hampshire of January 1, 1901, section first enacted in 1878; Revised Laws of Mass. (1902) vol. 1, chap. 12, § 93, p. 227; chap. 14, §§ 37, 40, pp. 266, 268, incl., taken from laws of 1864, 1865 and 1880; Revised Statutes of Missouri (1899), vol. 2, pp. 2175, 2176, §§ 9363, 9364; Laws of Wisconsin (1903), chap. 315, §§ 7–14, incl., pp. 496–499; *Railroad* v. *The State*, 60 N. H. 87; *The State ex rel. Brown* v. *The Missouri Pacific Ry. Co.*, 92 Missouri, 137; *Chicago & Alton R. R. Co.* v. *Lamkin*, 97 Missouri, 496; *The State ex rel.* v. *Metropolitan Street Ry. Co.*, 161 Missouri, 188, 199.

We have thus far assumed that there was equity and justice in applying to railroad property the average rate of taxation imposed upon other property. But this assumption is challenged. For instance, the Chicago and Northwestern Railroad Company's property is situate in the Upper Peninsula of the State of Michigan—

"and yet the average rate of tax applied to its property depends upon, and increases with, the taxes raised on all the counties of the 'Lower Peninsula' or Michigan, and in all the cities, towns, villages and school districts of those counties, for purely local purposes. If Detroit spends $10,000,000 for local government, the Northwestern Railway Company has to pay proportionately more tax on its property in Northern Michigan than if Detroit's tax for local government were $5,000,000; and, beyond that, if Detroit spends $1,000,000 or $5,000,000 for purely domestic or private enterprises, such as

gas works, water works, street railways, parks, baths, libraries, etc., the Northwestern Railway's tax on its property (though wholly outside of Detroit—in the 'Upper Peninsula') is proportionately larger on that account.

\*     \*     \*     \*     \*     \*     \*     \*

"It may well be that (as respects the immediate point) the unity of railroad property would justify a statute requiring a railroad to pay taxes to the State at a rate derived by averaging the taxes, state and local, paid by others in the same taxing jurisdiction; but the question before the court is whether it can be made to pay a tax directly dependent upon, and measured by, the local taxes of counties, cities, towns, villages and school districts where it has no part of its property and no office. Such a plan operates to tax the railroad because of the expenses (public and private) of local communities whose benefits it does not enjoy."

But these considerations appeal mainly to the discretion of the legislature, and do not make against its power. Unless there be some specific provisions in the state constitution compelling other action the State may treat its entire territory as composing but a single taxing district, and deal with all property as within the district and subject to taxation accordingly. There is no magic in county organization, no inherent necessity of dividing the State into small taxing districts. Frequently railroads are separated from other property, assessed by a state board, and the taxes collected therefrom applied to the general purposes of the State. Sometimes, it is true, a portion of the taxes thus collected is distributed *pro rata* to the counties along the lines of the roads, but the power of the State to apply the taxes from railroad property to only state purposes cannot be doubted, and is often exercised. If it may take all the taxes received from railroad property and apply it to general state purposes, and, to that extent, relieve counties in which there is no railroad property from their contribution to the support of the State, it has equal power to say that the average rate of taxation shall be determined, not by the rates upon other

property in the immediate localities in which the railroads are located, but by those upon all property wherever situated in the State. We do not mean to hold that cases may not arise in which enforcing this method of taxation works such injustice to a railroad as to call for judicial interference. But we do hold that the mere fact that all the property in the State is taken into account in determining the average rate does not carry with it such proof of injustice and inequality as to compel the courts in all cases to strike the latter down. From the cases that are before us involving this statute it appears that there are many railroad companies in the State, and we may fairly take judicial notice of the fact that the State is traversed in almost every direction by railroads. And while it is possible that there may be a county or two without one yet it is an exception, and to hold that for each railroad the average rate must be determined from the property in the localities immediately contiguous or through which its road passes might well introduce into the matter of taxation a confusion and inequality resulting in far greater injustice than the uniformity established by the present system.

Further, it must be borne in mind that the taxes collected from railroads in Michigan are, by sec. 16 of the act, applicable to state purposes, and while it is doubtless true that the appropriation of these taxes to state purposes diminishes the tax burden which will fall upon other property, yet the case presented is one in which the legislature, taking a class of property, imposes upon it through state authorities a state tax for strictly state purposes. That, so far as the restraints of the Federal Constitution are concerned, it is within the power of a State to separate a particular class of property, subject it to assessment and taxation in a mode and at a rate different from that imposed upon other property, and apply the proceeds to state rather than to local purposes is not open to question. *Kentucky Railroad Tax Cases,* 115 U. S. 321, is directly in point. By the legislation of Kentucky railroad companies and their property were separated from other

property, subjected to different means and methods for purposes of taxation, and upon this the court said (p. 337): ·

"But there is nothing in the constitution of Kentucky that requires taxes to be levied by a uniform method upon all descriptions of property.  The whole matter is left to the discretion of the legislative power, and there is nothing to forbid the classification of property for purposes of taxation and the valuation of different classes by different methods.  The rule of equality, in respect to the subject, only requires the same means and methods to be applied impartially to all the constituents of each class, so that the law shall operate equally and uniformly upon all persons in similar circumstances." -

See also *Pittsburgh &c. Railroad Company* v. *Backus,* 154 U. S. 421; *Florida Central &c. Railroad Company* v. *Reynolds,* 183 U. S. 471; *Coulter* v. *Louisville & Nashville Railroad,* 196 U. S. 599.

That no provision is made for a general equalization of railroad with other property in the State does not vitiate the assessment.  See *Cummings* v. *National Bank,* 101 U. S. 153, in which the question was distinctly presented and determined, the court saying (p. 161):

"While it may be true that this system of submitting the different kinds of property subject to taxation to different boards of assessors and equalizers, with no common superior to secure uniformity of the whole, may give opportunity for maladministration of the law and violation of the principle of uniformity of taxation and equality of burden, that is not the necessary result of these laws, or of any one of them; and a law cannot be held unconstitutional because, while its just interpretation is consistent with the Constitution, it is unfaithfully administered by those who are charged with its execution. Their doings may be unlawful while the statute is valid."

While there may be no provision for an equalization of railroad with other property, it w'll be perceived that the statute names the time and place for the sessions of the assessing board, gives to any person or company interested the right

to be heard, and also authorizes the board to correct the valuation. So that it cannot be objected that the railroad companies are precluded from a full hearing on the matter of valuation; and, as has heretofore been said by this court, one hearing is sufficient to constitute due process.

Other questions are discussed by counsel in their briefs, but in view of the exhaustive and well-considered opinion of the trial judge, with the general trend of which we concur, it is unnecessary to further extend this opinion. It is sufficient to refer to that opinion for a consideration of those questions. We have noticed those which seem to us paramount and controlling.

It is charged in the bill that there was a systematic under-valuation of other property in the State which resulted in denying to this plaintiff the equal protection of the law. The trial court found against this charge. It is enough to say that generally we accept the finding of a trial court upon a question of fact when the testimony respecting it is conflicting. It may also be said that a legislature is not bound to impose the same rate of tax upon one class of property that it does upon another. As it may exempt all of one class so it may impose a different rate of taxation. It is sufficient if all of the same class are subjected to the same rate and the tax is administered impartially upon them.

*Affirmed.*

Mr. Justice Brewer: Cases on the docket, numbered from 462 to 487, inclusive, are suits brought by different railroad companies against this appellee, and are submitted on the same record. The same decree will be entered in each of them.[1]

---

[1]The numbers and docket titles of the cases referred to are as follows:

462. *Detroit & Mackinac Railway Company* v. *Powers.*

463. *Chicago & Northwestern Railway Company* v. *Same.*

464. *Toledo, Saginaw & Muskegon Railway Company* v. *Same.*

465. *St. Clair Tunnel Company* v. *Same.*

466. *Michigan Air Line Railway Company* v. *Same.*

467. *Grand Trunk Western Railway Company* v. *Same.*