THE UNITED NEW JERSEY RAILWAY AND CANAL COMPANY AND THE PENNSYLVANIA RAILROAD COMPANY, PROSECUTORS, v. THE STATE BOARD OF ASSESSORS ET AL.

Argued March 9 and 23, 1907—Decided August 9, 1907.

1. The revised act of 1888 for the taxation of railroad and canal property (*Pamph. L.* 1888, *p.* 269; *Gen. Stat., p.* 3324), as amended by chapters 82, 122 and 280 of the laws of 1906 (*Pamph. L., pp.* 121, 220, 571), imposes "a uniform state tax, equally applicable to all railroad and canal corporations of this state," within the meaning of the "Act relative to transit duties," approved March 4th, 1869. *Pamph. L., p.* 226.

2. The act of 1869 relative to transit duties (*Pamph. L.* 1869, *p.* 226) does not prohibit the legislature from changing the method of taxation upon the property of the companies referred to in that act, provided the change be made by a general law imposing a uniform state tax equally applicable to all railroad and canal corporations of this state.

3. In the act of 1869 relative to transit duties (*Pamph. L.* 1869, *p.* 226) the words "a uniform state tax" do not mean a tax uniform in amount throughout all the taxing districts of the state, but a rule of taxation uniform in its application to all railroad and canal property within the several taxing districts.

On *certiorari.*

Before Justices FORT, HENDRICKSON and PITNEY.

For the prosecutors, *Richard V. Lindabury* and *James B. Vredenburgh.*

For the defendants, *Bennet Van Syckel, John R. Hardin* and *Robert H. McCarter,* attorney-general.

The opinion of the court was delivered by

FORT, J.    This writ brings up an assessment for taxation by the state board of assessors against the property of the prosecutors in the year 1906, the assessment being imposed under the act for the taxation of railroad and canal property, approved April 10th, 1884, and amended March 27th, 1888, and the further amendment to said act, approved April 5th, 1906. *Pamph. L.* 1906, *p.* 121.

The prosecutors seek to set aside this assessment on the ground that they have an irrepealable contract with the state with relation to taxation, and that the assessment imposed under the acts above stated is in violation of that contract, and, hence, void.

A brief summary of the act incorporating the various railroads consolidated in the United New Jersey Railway and Canal Company and leased to the Pennsylvania Railroad Company is necessary.

The Delaware and Raritan Canal Company was incorporated by an act approved February 4th, 1830 (*Pamph. L., p.* 73), and that act contained in the twenty-sixth section a provision with relation to taxation which required a quarterly report to be made to the state, and imposed upon the company the duty to pay to the state treasurer eight cents for each passenger carried and eight cents for each ton of merchandise transported, except certain articles, which were to bear only two cents per ton, and at the end of the section is the following clause:

"And that no other tax or impost shall be levied or assessed upon the said company."

In the same year, 1830, an act was passed incorporating the Camden and Amboy Railroad and Transportation Company (*Pamph. L.* 1830, *p.* 83), and by the twenty-third section of

that act that road was required to make like reports, and upon it was imposed the duty of paying to the state ten cents for each passenger and fifteen cents for each ton of merchandise transported, and at the end of that section occurs this clause:

"And that no other tax or impost shall be levied or assessed against said company."

By an act passed February 15th, 1831, entitled "An act relative to the Delaware and Raritan Canal Company and the Camden and Amboy Railroad and Transportation Company" (*Pamph. L.* 1831, *p.* 124), these companies, with the consent of seven-eighths of their stockholders, were authorized to consolidate their capital stock. This act contained no provision on the subject of taxation.

Subsequently, on the 2d of March, 1832, a supplement to this last-mentioned act was passed, but that act is of no concern in this recital.

On the 7th of March, 1832, an act to incorporate the New Jersey Railroad and Transportation Company was passed (*Pamph. L.* 1832, *p.* 96), conferring authority to construct a road from the city of New Brunswick to the Hudson river, and, under the charter of this company, at the end of five years after the completion of the road, they were to pay to the state a tax of one-fourth of one per cent. upon their capital stock paid in, and, at the expiration of ten years, a tax of one-half of one per cent. upon the true amount of capital stock of said company was required to be paid, and there occurs this clause in section 18 of that act:

"And that no other or further tax or impost shall be levied or imposed upon said company."

By an act of March 15th, 1837, which was a supplement to the act relative to the Delaware and Raritan Canal Company and the Camden and Amboy Railroad and Transportation Company (*Pamph. L.* 1837, *p.* 473), these companies out of their joint funds were authorized to construct a railroad from the terminus of the New Jersey Railway and Transportation Company from the city of New Brunswick to the city of Trenton, and thence to some point on the line of the Camden

and Amboy railroad at or near Bordentown, where there was to be a connection with the last-named road. And the third section of this last-mentioned act provided:

"That the same transit duties for goods, wares and merchandises and for passengers transported on or over said road from Bordentown, or from the Trenton and Delaware bridge, or from the city of Trenton to the city of New Brunswick * * * (or between the same points in the other direction) that they shall be liable to pay to the state for the same goods and passengers as if they had been transported on the Camden and Amboy railroad from Camden to South Amboy."

That is, it made the transit duties fixed in the statute incorporating the Camden and Amboy Railroad Company applicable to this railroad.

By the act of March 15th, 1837, being a supplement to the act relative to the Delaware and Raritan canal and the Camden and Amboy Railroad and Transportation Company (*Pamph. L.* 1837, *p.* 482), upon its acceptance by the companies, certain rates for passenger traffic were allowed to be increased, with one-half of the increase coming to the state, but, by the proviso at the end of section 1 of that act, it was enacted:

"That the transit duty shall in no case be less than ten cents for each passenger carried on said road."

This was the condition of the legislation applicable to the roads to which reference has been made, on the 27th day of February, 1867, when there was an act passed entitled "An act to validate and confirm certain agreements between the companies owning railroad lines between New York and Philadelphia." *Pamph. L.* 1867, *p.* 114. This act authorized the Delaware and Raritan Canal Company and the Camden and Amboy Railroad and Transportation Company and the New Jersey Railroad and Transportation Company to make such agreement for consolidation of interests as they might deem proper and expedient, and then proceeds as follows:

"Any such agreement or agreements heretofore made or hereafter to be made for the purposes aforesaid, by and be-

tween the said companies, or by and between them, or any of them, and the Philadelphia and Trenton Railroad Company, be and the same are hereby validated, ratified and confirmed."

And, at the end of the section from which quotation has just been made, there is this proviso:

*"Provided,* that the transit duties and all other taxes and dues accruing to this state from any of said companies are not to be changed or diminished by anything herein contained."

Under this act of 1867 the consolidation agreement which was entered into, or which had been already entered into, was ratified and confirmed, and the United Railroad and Canal Companies came into being.

On the 30th day of March, 1868, after such consolidation, an act was passed to enable the United Railroad and Canal Companies to increase their depot and terminal facilities at Jersey City. *Pamph. L.* 1868, *p.* 551.

This act was a grant by the state to the companies through a conveyance to the New Jersey Railroad and Transportation Company of what is known as the Harsimus cove property in Jersey City, this to be used for increasing the depot and other facilities at Jersey City, and in the second section of this act it was provided:

"That any other tax other than that which is imposed upon the said companies, respectively, by their respective charters or acts of incorporation, is hereby repealed."

So that this left the charter provisions with regard to transit duties in lieu of taxes in force, and, if it repealed anything, it repealed simply the provisions of the act of March 15th, 1837, *supra,* which gave to the state one-half of certain increase in railroad fares for the transportation of passengers between New York and Philadelphia, when the rate exceeded $3 per person.

With this state of taxation existing, and this contract with the state in operation, the legislature, in 1869, passed an act, which is the important statute in this controversy, which was approved March 4th, 1869, and entitled "An act relative to

transit duties." *Pamph. L.* 1869, *p.* 226. This act reads as follows:

"1. Be it enacted by the Senate and General Assembly of the State of New Jersey, That, from and after the passage of this act, all transit duties, whether passenger or freight, shall be and they hereby are abolished.

"2. And be it enacted, That all companies heretofore paying transit duties to the state shall hereafter pay each year, in quarterly payments as heretofore to the treasurer of this state, a tax of one-half of one per centum upon the costs of their respective works, including all their property of every description not otherwise taxed, until the legislature shall, by general law, impose a uniform state tax, equally applicable to all railroad and canal corporations of this state, and said companies shall then pay such uniform tax; and until such general law be passed, no company heretofore paying transit duties as aforesaid shall, in any year hereafter, pay a less sum as tax to the state than that paid by it for taxes and duties of all kinds for the year eighteen hundred and sixty-eight, and said amounts shall be paid by them in equal quarterly payments, and no other tax or impost shall be levied or assessed upon said companies.

"3. And be it enacted, That this act shall not apply to any corporation having a contract with this state in reference to taxation, unless, within three months from the passage hereof, this act and its provisions be accepted by the board of directors of such corporation in place of said contract, and a certificate of such acceptance, under the corporate seal of such corporation, be filed in the office of the secretary of state, which certificate, or a duly-certified copy thereof, shall be plenary evidence of such acceptance, and, until the filing as aforesaid of such acceptance, such corporation shall pay as now required by law.

"4. And be it enacted, That this act shall take effect immediately."

This act was accepted in accordance with its terms by the above-named companies who were then paying transit duties to the state, and the effect of the first section of that statute

was to abolish all transit duties, and that form of taxation, as to all companies to which it applied, and to establish the method pointed out in section 2 of the act of 1869 as the only method for the taxation of the property of these railroads after the passage of this act, which was upon the following basis, namely:

"A tax of one-half of one per centum upon the cost of their respective works, including all their property of every description not otherwise taxed, until the legislature shall, by general law, impose a uniform state tax equally applicable to all railroad and canal corporations of this state, and said companies shall then pay said uniform tax."

After the enactment of this statute an act was approved on the 17th of March, 1870, entitled "An act to enable the United Railway and Canal Companies to consolidate their stock and to consolidate or agree with other companies (*Pamph. L.* 1870, *p.* 916), and, under it, the Delaware and Raritan Canal Company, the Camden and Amboy Railroad Company, the New Jersey Railroad and Transportation Company, these being sometimes called the United Companies, and the United Railway and Canal Companies, were stated to be identical in interest, and to have an identity of interest with the Philadelphia and Trenton Railway Company and other companies, and it was enacted by this last act that said United Companies, by the consent of two-thirds in interest of their stockholders, might consolidate their respective capital stocks with any other railroad or canal company or companies in this state or otherwise, by agreement, contract, lease or otherwise, as to the directors of the United Companies might seem expedient. There was a proviso in the second section of this act which reads as follows:

"That no such consolidation agreement, contract, lease or other arrangement· shall have the effect or be construed to release or discharge the said United Companies, or any or either of them, or any company or companies with which any such consolidation agreement, contract or lease may be made, from any taxes, liabilities, obligations or duties which they,

or either of them, may be subject or liable to, either to this state or to any other person or persons."

Pursuant to the statute last quoted, agreements were made between the said companies, and the legislature, on the 14th of March, 1872, passed a law entitled "An act to amend an act entitled 'An act to validate and confirm certain agreements between the companies owning the railroad lines between New York and Philadelphia.'" *Pamph. L.* 1872, *p.* 567. And this act provided for the complete consolidation of the Delaware and Raritan Company, the Camden and Amboy Company and the New Jersey Railway and Transportation Company, and that the capital stock of these three companies should be canceled and a like amount of consolidated capital stock issued. And this act contains the following clause as to taxation:

"The consolidated corporation thus authorized to be formed shall be vested with and hold all the rights, titles, powers, franchises, privileges, properties, immunities and advantages heretofore conferred upon or now held by any or either of said three corporations respectively."

It will be noted that through all this legislation there runs a manifest purpose on the part of the state to retain and enforce its contractual rights with these companies as contained in their original charters, or as modified by the act of 1869, which changed the method of taxation from transit duties to a fixed percentage.

In this condition of the law the prosecutor, the Pennsylvania Railroad Company, entered into a lease with the United Railroad Companies for a period of nine hundred and ninety-nine years, leasing all the properties mentioned in the charters, to which reference has been made, or owned or operated by any of these companies, this lease being made after the enactment of the act of March 14th, 1872, and after the companies mentioned in that act had accepted the same by certificates filed as required by the statute, and which will be found printed on page 1402 of the laws of 1872.

The agreement between the Pennsylvania Railroad Company and these United Companies was ratified by the legisla-

ture of the state on the 27th of March, 1873, by an act entitled "An act to validate and confirm a certain lease and contract between the companies now known as the United Railroad and Canal Companies and the Pennsylvania Railroad Company."

There is nothing in this last statute on the subject of taxation, unless a clause in the proviso may be deemed to relate to it, and that clause reads as follows:

"That nothing in this act shall be considered as a waiver of any rights that the State of New Jersey has in the corporations named in this act."

By the lease which was thus ratified and which was referred to in the statute as being on file in the office of the secretary of state, it was provided that all the franchises, rights and privileges of the lessors (that is, the United Railway Companies), thereto respectively belonging or in anywise appertaining, were transferred to the lessee, and whatever rights, therefore, were possessed by the lessor companies passed to the Pennsylvania Railroad Company under this act by consent of the state, and the contractual relation, if any, between the state and the United Railroad Companies, of which the Pennsylvania railroad became the lessee, still inheres in the charter rights of the lessors which had been thus transferred.

That the contracts with relation to taxation existing between the lessor companies and the state, as found in their original charters, were deemed to be irrepealable contracts, is so firmly settled by the decisions of this court that it will not be deemed here to be an open question.

In the case of *United Railroad and Canal Co.* v. *Commissioner of Railroad Taxation,* 8 *Vroom* 240 (at *p.* 248), Mr. Justice Depue says:

"But the existence of a contract of this nature (that is, an irrepealable contract) with these prosecutors in their original acts of incorporation is too firmly established to be a debatable question."

To sustain this statement that learned justice cites the following cases: *State* v. *Branin,* 3 *Zab.* 484; *Camden and Amboy Railroad Co.* v. *Commissioners of Appeals,* 3 *Harr.* 71;

*State* v. *Berry,* 2 *Id.* 80; *State* v. *Gardner,* 1 *Zab.* 557; *New Jersey Railroad and Transportation Co.* v. *Hancock,* 6 *Vroom* 537.

At another point in the opinion, from which the above quotation is made, the same learned justice says (at *p.* 253):

"The allegation is that the prosecutors have irrepealable contracts with the state on the subject of taxation. Not having filed a surrender of such contracts they have not subjected themselves to taxation under the tenth section of the act of 1873, and they are not liable under the first section, inasmuch as the act of 1873 is not a taxation by general law provided for by the act of 1869."

This brings us to a more specific consideration of the act of 1869. *Pamph. L., p.* 220.

That the method of taxation provided for by the act of 1869 was substituted for that contained in the respective charters of the several companies composing the United New Jersey Railroad and Canal Companies we have no doubt. The language of this act makes its purpose clear.

Before it was to become operative it was to be accepted by the corporations to which it might apply. It was so accepted by the United Companies, as we have seen. By this acceptance the contract for transit duties, in lieu of taxation, was by the first section of that act clearly abrogated by mutual agreement.

The second section of the act substitutes for the transit duties previously imposed a specific tax of "one-half of one per centum upon the cost of their respective works, including all their property of every description not otherwise taxed."

This, we think, becomes the substituted or modified contract, if any contract thereafter existed, between these companies and the state, and this method of taxation became, if a contract existed, the exclusive method of taxing such companies, unless and until, as the act provides, "the legislature shall, by general law, impose a uniform state tax equally applicable to all railroad and canal corporations of this state, and said companies shall then pay such uniform tax."

The specific rate tax was, therefore, after 1869, the only

method of taxing the property of the prosecutors in this case so long as the state failed to enact a general law imposing a uniform tax upon the property of all railroad and canal corporations. Whenever the state saw fit to place the property of all railroad and canal companies, for the purpose of taxation, under a general law, there was nothing in the act of 1869 to inhibit its so doing.

Assuming the act of 1869 to be a contract between the prosecutors and the state, it in no way prohibits the legislature from changing the method of taxation provided in that act, if the change made shall be made by a general law applicable to all the property of all railroad and canal companies in the state, and shall establish a uniform state tax upon such property.

In 1873 the legislature passed an act for the taxation of the property of railroad companies only, and this act, while it was general in terms, was held to be void as against the United New Jersey Railroad and Canal Companies because not within the act of 1869, in that it was not an act taxing all railroad and canal corporations; but it is quite evident from the opinion of Mr. Justice Depue, to which reference has heretofore been made, that, if the act of 1873 had been made applicable to both railroad and canal companies, it would have been sustained. *United New Jersey Railroad and Canal Co.* v. *Commissioner of Railroad Taxation,* 8 *Vroom* 240, 253.

This leaves, as the first question to be determined, is the act of 1906, under which the assessments were laid in the case before us, a general law for the taxation of the property of all railroad and canal corporations?

We think it is.

That phase of this question is disposed of in an opinion filed by Mr. Justice Pitney in the several cases argued together with this case.

An examination of both the title and the body of the act of 1884, as amended by the act of 1888 (*Pamph. L.* 1884, *p.* 142; *Pamph. L.* 1888, *p.* 269), will make it clear that those acts were for the purpose of establishing, by a general law, a

uniform system for the taxation of the property of all railroad and canal companies.

The title of the act of 1884 is as follows: "An act for the taxation of railroad and canal property." And this title has been since retained in all the revisions and supplements to that act, to and including the act of 1906, under which the tax here in litigation was imposed.

The decision of the Court of Errors and Appeals in *Central Railroad Co.* v. *Board of Assessors,* 19 *Vroom* 146, 149, sustaining the constitutionality of the act of 1884, is placed upon the ground that said act is a general law under the provisions of our state constitution, which requires that all laws with relation to taxation shall be general and based upon a uniform rule.

The act of 1905 (*Pamph. L., p.* 189), in so far as it modifies the act of 1888, has been held at this present term of the Court of Errors and Appeals not to change the general character or uniformity of the act of 1884 as revised in 1888. *Bergen and Dundee Railroad Co.* v. *State Board of Assessors,* 45 *Vroom* 742.

The act of 1884, as revised by the act of 1888, and the amendments or supplements of 1905 and 1906, being general laws, in no way impaired any contractual right which the prosecutors have, if any they have, under the act of 1869. These acts, being general acts for taxation, are within, and not without, the act of 1869.

It is further suggested that, under the act of 1860, the tax which may be imposed upon railroad and canal property, in substitution for the specific tax imposed by that act, must not only be imposed by a general law, but such tax must be "a uniform state tax."

The contention of the prosecutor on this point, as we understand it, is that the act of 1884, as revised in 1888, since the amendments of 1905 and 1906, all of which have been referred to herein, does not establish a uniform state tax within the provisions of the act of 1869, and, hence, is not applicable to the prosecutors.

This necessitates a consideration of the expression in the act of 1869, "uniform state tax."

The learned counsel for the prosecutors states his contention on this point in this way:

"Manifestly the intention was that the companies should be subjected to no other burden than such as should be imposed upon their rivals, and that that burden should rest upon them and their rivals uniformly and equally."

We are unable to see how there is anything in the act of 1906 that conflicts with this statement of counsel. The act of 1884, as amended in 1906, applies to all railroads and canals in the state; and the act of 1906 establishes a uniform rate upon the property of all railroad and canal corporations defined under subdivisions 1, 3 and 4 of section 3 of the act of 1884, as amended in 1888. These three classes of property, briefly stated, are the main stem, the personal property and the franchises of such railroads. By the third section of the act of 1906 these three classes of property are to be assessed at a uniform rate, to be arrived at from the average rate of taxation, to be ascertained in the manner pointed out in section 3 of the act of 1906. This is clearly a uniform rate as to the classes of property to which it applies, and which the legislature has seen fit to segregate for the purposes of taxation. *Michigan Central Railroad Co.* v. *Powers,* 201 *U. S.* 245, 293.

The remaining class of railroad property taxed under these acts is that included within the second subdivision of section 3 of the act of 1884, amended in 1888, which consists of other real estate used for railroad and canal purposes in each of the taxing districts of the state, including the roadbed (other than main stem), waterways, reservoirs, tracks, buildings, water tanks, water'works, riparian rights, docks, wharves and piers and all other real estate, except land not used for railroad or canal purposes." This class of property is to be assessed in the manner pointed out in the supplement of the act of 1884, as revised in 1888 (*Pamph. L.* 1906, *p.* 571), and that act provides that that class of real property shall be assessed and taxed in each taxing district in this state in the

same manner and at the same rate as other property located in said taxing district is assessed and taxed. This last supplement is applicable to all classes of railroad and canal property to which it refers, of every railroad and canal corporation, and establishes, as we think, a uniform rate as to each of them, namely, the rate of taxation imposed in each taxing district in which the property lies.

We do not construe the words "a uniform state tax" in the act of 1869 to mean a tax uniform in amount throughout all the taxing districts of the state within the entire territory of the state, but as fixing a rule of taxation which shall be uniform in its application to all railroad and canal property within the several taxing districts. The rate of taxation in the several taxing districts must, of necessity, owing to their different needs, vary, but the variance is uniform in its application upon all railroad and canal companies owning property within the several taxing districts, and, hence, the rate of taxation in the several districts falls with equal burden upon the property of each railroad and canal company within each of the taxing districts of the state.

It was suggested that "a uniform state tax" meant that the tax must be imposed by the state at a given rate, to be applicable to all taxing districts; that no tax otherwise fixed and imposed, or imposed for local purposes, could be deemed a state tax. This question, however, we do not deem to be an open one. In *Central Railroad Co.* v. *Board of Assessors,* 19 *Vroom* 146, 280, Chancellor Runyon delivered the opinion of the court on the constitutionality of the act of 1884, and said:

"All taxes, whether levied for state, county or municipal purposes, are state taxes; they can be imposed by no other authority than that of the state. The state appropriates the proceeds to what purposes it sees fit, but, however the proceeds may be appropriated, every tax is a state tax."

See, also, *C. & B. R. R. Co.* v. *Cook,* 3 *Vroom* 338, 340.

We reach this result:

*First.* That, by the Transit act of 1869, the irrepealable contracts contained in the original charters of the several railroad and canal companies composing the United New

Jersey Railroad and Canal Company, fixing transit duties in lieu of other taxes, were abolished.

*Second.* That, if the act of 1869 created any contract, upon its acceptance by the United Companies, it was a contract to pay the specific tax mentioned in that act, or such other tax as should be imposed upon the property of all railroad and canal corporations.

*Third.* That the act of 1884, as revised in 1888, and the acts of 1905 and 1906 (all *supra*), are general laws, within the requirements of the act of 1869.

*Fourth.* That a state tax is any tax imposed by legislative authority, whether assessed directly by the state itself or by an agency of the state.

*Fifth.* That the taxation imposed under the act of 1884, as revised and amended in the acts of 1888 and 1906, as to the separate classes of railroad and canal property segregated by the legislature for taxation, is a uniform state tax.

This result leads to an affirmance of the tax brought up, either under or irrespective of any contractual relation which may exist between the state and the prosecutors under the act of 1869.